UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
JUN 2 9 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

RICHARD DALE TALBOTT #04895-028
Plaintiff/Petitioner
Federal Correctional Institution
P.O. Box 5000
Greenville, IL 62246

v.

FEDERAL BUREAU OF PRISONS, et al.
Defendants/Respondents

Crim. Case No. ~~████~~

CASE NUMBER 1:06CV01194

JUDGE: Gladys Kessler

DECK TYPE: FOIA/Privacy Act

DATE STAMP: 06/29/2006

# COMPLAINT

PRO SE PETITION FOR DECLARATORY RELIEF AND MONETARY DAMAGES,
PURSUANT TO TITLE 5 UNITED STATES CODE, SECTION 552a(g)(4),
FOR VIOLATION OF TITLE 5 UNITED STATES CODE, SECTION (e)(5)
AND SECTION (g)(4) OF THE PRIVACY ACT

COMES NOW THE PLAINTIFF, RICHARD DALE TALBOTT, IN PRO SE, and respectfully prays this Honorable Court enters and grants the instant civil cause of action seeking relief in the form of declaratory judgement and the award of monetary award against the defendants named herein for willful and intentional violation of Title 5 United States Code, Sections (e)(5) and (g)(4).

In support of his instant petition for relief, the Plaintiff would submit the following to this Honorable Court for its review;

## JURISDICTION

Jurisdiction is invoked pursuant to Title 5 U.S.C.S. 552a(g)(1)(C) of the Act, which provides, in relevant part, that:

> "Whenever any agency-(C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection." See also Title 5 United States Code, Section 552a (g)(5).

RECEIVED
JUN 2 0 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

## STANDARD OF REVIEW

The Plaintiff herein, respectfully, requests that this Honorable Court construe the instant civil action liberally. See **Haines v. Kerner**, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); also **Richardson v. United States**, 193 F.3d 545, 548 (D.C. Cir. 1999).

In **Razzoli v. Federal Bureau of Prisons**, 230 F.3d 371 (D.C. Cir. 2000), the Circuit Court accepted the rule that:

"**...we are bound to read the filings of a pro se litigant liberally.**"

citing **Haines v. Kerner**, supra.

Also in support of his request, the Plaintiff informs this Honorable Court that he is not educated in law at the time of the instant civil action and is being housed in administrative detention at the time of filing and, therefore, seeks the full benefit of the above authorities.

## RELEVANT FACTS
## SUPPORTING INSTANT CLAIM

On November 19, 1994, the Plaintiff (hereafter "Talbott") possessed a .22 rifle and, on November 21, 1994, he possessed 24 rounds of .22 ammunition, after having previously been convicted of a felony offense.

In December, 1994, Talbott was indicted by a grand jury sitting in the Southern District of Indiana (Indianapolis Division).

Count one charged Talbott with possessing the firearm on November 19th and count two charged him with possessing the ammunition on the 21st.
                              Exs. 1-2

At his trial, Talbott claimed he only possessed the firearm on the 19th in defense of his wife and himself and that he only possessed the ammunition on the 21st of November after finding it in his (now deceased) wife's automobile and attempting to turn it over to the local prosecutor's office.

The district court placed the burden of proof on Talbott to prove both of his defenses to the jury before he could be acquitted of the crimes, afterwhich, on February 15, 1995, Talbott was convicted of both counts.

Following his conviction, a Presentence Investigation Report (PIR) was ordered prepared for purposes of sentencing, which was prepared by the U.S. Probation Office located in Indianapolis, Indiana.

In this PIR, the alleged conduct making up the firearm charge was contained in paragraphs 4 through 9 (count one), and the alleged conduct making up the ammunition charge was contained in paragraph 10 (count two).

Inexplicably, and totally unsupported by any of the testimony given in the criminal case, the probation officer alleged that the "offense conduct" involved in the firearm count of conviction concerned Talbott shooting someone with the firearm on November 19, 1994.

At his sentencing, the district court (for the Southern District of Indiana) enhanced Talbott's sentence in light of this allegation and, on June 9, 1995, sentenced Talbott to concurrent terms of twenty seven (27) years imprisonment, inter alia.

Judgement was entered on June 14, 1995.
                              Ex. 3

Talbott appealed both the firearm conviction and the sentence to the United States Court of Appeals for the Seventh Circuit.

The Court of Appeals ruled, inter alia, that (1) the firearm conviction was obtained in violation of Talbott's right to a fair trial under the U.S. Constitution and that (2) the sentence was illegal since the district court based it on conduct not charged in the indictment.

More specifically, the Court found that whether or not Talbott shot anyone with the firearm in November (in self defense or not) was "irrelevant to the federal charge." See **United States v. Talbott**, 78 F.3d 1183 (7th Cir. 1996).

### Exs. 4-11

The Case was, thereafter, ordered remanded to the district court where, on July 3, 1996, the district court judge ordered count one of the federal indictment (i.e., the firearm charge) dismissed.

### Ex. 12

An amended Judgement & Commitment was entered on July 10, 1996, in which the firearm charge was removed - reflecting only the fact that Talbott stood convicted of being a felon in possession of ammunition, and that the conduct occurred on November 21, 1994.

### Ex. 13

Shortly, after arriving at his current institution (the Federal Correctional Institution located in Greenville, Illinois), Talbott became aware of inaccurate information contained in his Inmate Central File (maintained by the defendant), which was being used to make decisions adverse to him and his rehabilation efforts.

For instance, the defendant informed Talbott that the conduct alleged to have occurred with the firearm on the 19th of November, 1994 (contained in paragraphs 4 through 9 of the PIR), in which it was alleged that Talbott shot someone with the firearm, was being used to make adverse determinations regarding custody and security classifications concerning Talbott.

Defendant also informed Talbott that the conduct allegedly involved with the firearm charge was being used to label his current offense a crime of violence and to place a "public safety factor" against him.

Talbott, specifically, informed the defendant that the offense conduct he is currently imprisoned for is that contained in paragraph 10 of his PIR.

### Ex. 14

The defendant, however, informed Talbott that the alleged conduct relating to the dismissed firearm count (located in paragraphs 4 through 9 of the PIR) would continue to be used against him, in the future.

By using this inaccurate information, the defendant is also making many other adverse decisions affecting Talbott, thus, In September, 2004, Talbott sought to have his records corrected as permitted under the Privacy Act of 1974. See also Title 28 C.F.R., Sec. 16.54; also Bureau of Prisons, Program Statement 5800.11.

Program Statement (hereafter "PS") 5800.11 sets forth the procedures to be used by BOP staff when an inmate wishes to challenge information in his file and the procedures to be used by the inmate when seeking to launch a challenge, by having staff seek verification of the evidence he presents in support of his challenge.

Once a challenge is made, and evidence presented by the inmate in support of the challenge, staff is required to "take reasonable steps to ensure the information is correct." See PS 5800.11, Section 15(c).

Should the evidence submitted by the inmate be verified as being accurate or correct, staff is to attach both the inquiry and the response to the challenged document in the inmate's central file.

Thereafter, the Bureau of Prisons is to ensure that no future decisions affecting the inmate are based on the discredited information. Id.

Talbott submits that he is being deprived of his rights under the Privacy Act, also that the defendant is not only in violation of Title 5 USCS 552a(e)(5), but is willfully and intentionally violating the Act by using inaccurate information in his central file to make adverse decisions against him when the truth concerning the challenge is/was easily ascertainable. See **Sellers v. Bureau of Prisons**, 959 F.2d 307 (D.C. Cir. 1992).

Not only does the defendant refuse to "take reasonable steps to ensure that the information" Talbott presented is correct, but has admitted to Talbott that they are aware of the inaccurate information but will not discontinue using it until Talbott has it verified as being true - something the defendant realizes is not likely to happen due to the bad feelings held by the probation office and the district court clerk's office, towards Talbott.

<u>CLAIM NO. 1</u>

THE FEDERAL BUREAU OF PRISONS IS IN VIOLATION OF TITLE 5 UNITED STATES CODE,
SECTIONS 522a (e)(5) AND (g)(1)(C), BY FAILING TO MAINTAIN ACCURATE RECORDS
<u>ON THIS PLAINTIFF, AND USING THEM TO MAKE DECISIONS ADVERSE TO HIM</u>

Argument In Support of Claim

Talbott alleges, claims and submits to this Honorable Court that the defendants named herein are in violation of the Privacy Act of 1974, specifically sections (e)(5) and (g)(1)(C) of the Act, by failing to maintain accurate records concerning him.

In 2004, Talbott requested to know, from his unit manager (Pete Pottios), the proper procedures to follow in order to make a challenge to information located in his central file, concerning the dismissed firearm count and its use by the BOP when determining custody and security scores.

Instead of following the procedures and requirements (mandatory requirements) outlined in PS 5800.11, Section 15(c) and Title 28 C.F.R., Sec. 16.54(e), Mr. Pottios instructed Talbott to write down formal objections to the PIR in an effort to have the report revised or altered.

While Talbott followed the advice of Mr. Pottios and presented evidence in support of his challenge, Mr. Pottios completely failed to inform Talbott of the fact that, since the PIR is an official court document, no procedures exists "for changes or addendums to be made to the presentence report." See PS 5800.11; also Title 28 C.F.R., Sec. 16.46 (f)(3).

Talbott, who challenged information contained in his PIR alleging his instant offense conduct included him shooting someone, wrote his objections down and presented them to Mr. Pottios who, then, contacted the U.S. Probation Office on September 15, 2004.

In support of his challenge, Talbott presented Mr. Pottios with the exhibits contained herein.

Rather than seek verification of the evidence/exhibits Talbott presented, however, Mr. Pottios' communication was prepared in a manner which indicated that Talbott was seeking a revision or alteration of his PIR.

Shortly, thereafter, the probation office denied Talbott's request to have his PIR "altered or revised."

All future requests by Talbott (properly filed pursuant to PS 5800.11) to have the Bureau of Prisons verify his information/evidence, or at least take "reasonable steps" to have it verified, have been denied through reliance on the communication, and response, of September, 2004.

Since that time the defendant has continued to use the information contained in paragraphs 4 through 9 of the PIR to make decisions adverse to Talbott regarding, for instance, custody and security classifications, housing and other areas relating to service of his sentence.

Talbott has exhausted his administrative remedies and appeals, which were all denied.

**Exs. 15-26**

In April, 2006, one of the staff members at the institution where Talbott is being housed, informed him of PS 5800.11 and the fact that any challenge to any information in his files should be made through the records office.

Thereafter, Talbott presented another formal challenge to the offense conduct section of the PIR, pursuant to PS 5800.11.

As he had been doing for the past year and a half, Talbott presented the following evidence, at a minimum:

1. The initial Judgement & Commitment order;
2. The appellate court's decision concerning his criminal case;
3. The July 3, 1996, court order dismissing count one of the indictment; and
4. The Amended Judgement & Commitment order, revealing only the ammunition count of conviction, and sentence.

The Bureau of Prisons, however, refuses to seek verification of this evidence as mandated by PS 5800.11, in order to comply with the requirements of the Privacy Act and Title 28 C.F.R., Sec. 16.54(e).

Based on the admissions by the defendant that the records being maintained on Talbott are, in fact, inaccurate (see letter of Mr. Pottios to the probation office), and its continued use of the alleged conduct with the firearm to make adverse decisions against Talbott, the defendant's violation of the Privacy Act is clearly willful and intentional.

As stated in **Sellers v. Bureau of Prisons**, 959 F.2d 307 (D.C. Cir. 1992):
> "As long as the information...is capable of being verified, then under sections (e)(5) and (g)(1)(C) of the Act, the agency must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual." **Sellers**, supra; see also PS 5800.11

Inexplicably, upon becoming aware of the instant civil action, Talbott received two communications from Mr. Pottios advising Talbott to "be patient" while "research" was being done concerning the April, 2006, request.

Talbott also received a communication from the warden (Sarah Revell) advising him to "be patient" and informing him that he:

"...appears [to be] **taking appropriate steps to contest the information used in [his] instant offense scoring on [his] custody classification.**"

Exs. 27-29

However, based on the two year time limitation for filing under the Act, the defendants' persistent refusal to follow the law, the Code of Federal Regulations and their own Program Statements (not to mention the year and a half already wasted on appeals as a result of their failure to be truthful), Talbott feels compelled to seek a remedy through this Honorable Court

## Conclusion

The Privacy Act of 1974 requires that each agency keeping a system of records must maintain those records with "such accuracy, relevance, timeliness, and completeness as is reasonably necessary" to assure fairness to an individual. Title 5 USCS 552a (e)(5).

If an agency willfully or intentionally fails to maintain records in such a manner and, as a result, makes a determination adverse to an individual, it will be liable to that person for money damages. Title 5 USCS 552a (g)(1)(C); Title 5 USCS 552a (g)(4).

The defendants herein are using information contained in Talbott's records and files to do just that although the records have been challenged concerning the 'offense conduct' the defendants say he is imprisoned for.

Because the challenged information present in Talbott's records is capable of being verified (as correctly making up part of his current offense conduct), and the information presented in support of Talbott's challenge to that information is capable of verification, the defendant is in clear violation of the Privacy Act of 1974, Title 28 C.F.R., Sec. 16.54 (e) and PS 5800.11, by refusing to "take reasonable steps" to ensure the correctness/ accuracy of the information.

While the Privacy Act of 1974 specifically exempts amendment or correction of a presentence investigation report, itself, see 28 C.F.R., Sec. 16.46(f)(3), regulations governing the Bureau of Prisons do not exempt this agency's records from the requirements of section (e)(5) of the Act, which mandates that:

> "(e) **Each agency that maintains a system of records...(5) shall maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination.**"

Federal inmates, such as Talbott, may seek to correct the information in their central files thorugh the Bureau of Prisons Program Statements, such as that found in PS 5800.11, which specifically informs the Bureau of Prisons' employees of the requirements of the Privacy Act, as does the Code of Federal Regulations.

For instance, Title 28 C.F.R., Sec. 16.54 (e) states that;

> "**Each [Department of Justice Bureau] will informs its employees of the provisions of the Privacy Act, including the Act's civil liability & criminal penalty provisions.**"

This regulation goes on to inform that:

> "**Unless otherwise permitted by law, an employee of the Department of Justice shall...(e) Maintain all records that are used by the Department in making any determination about an individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to ensure fairness to the individual in the determination.**"

Clearly, this regulation was codified in order that the Department of Justice (and thus, the Bureau of Prisons) comply with the requirements of Title 5 USCS 552a (e)(5) and Title 5 USCS (e)(9).

As Program Statement 5800.11 also specifically provides the defendant with the information mandated under 28 C.F.R., Sec. 16.54 (e), the defendant cannot claim ignorance of the law under these circumstances and it can be safely assumed that defendants were aware of these requirements and mandates in 2004.

**RELIEF REQUESTED**

Based on the foregoing, and in light of the violations committed by the defendants, the Plaintiff herein seeks the following relief from this Honorable Court;

1. That the court determine, de novo, whether Talbott's challenge (and supporting evidence), to defendants' records and allegation that Talbott is currently serving a term of imprisonment for an offense which involved him shooting someone, is in fact accurate.  See **Sellers v. Bureau of Prisons**, 959 F.2d 307 (D.C. Cir. 1992);

2. That the court rule, as a matter of law, the offense Talbott is imprisoned for in criminal case no. NA94-21-CR-01-H/H, is count II (felon in possession of ammunition), the commission of which occurred on November 21, 1994;

3. That the court rule, as a matter of fact, Talbott is not accused, in the federal indictment, of having shot anyone with ammunition on November 21, 1994;

4. That the court rule, as a matter of law, the offense Talbott is imprisoned for is not a "crime of violence," as that term is defined;

5. That the court rule, the "offense conduct" Talbott is currently imprisoned for, is that contained in paragraph 10 of the PIR, concerning his criminal case, and does not allege Talbott shot anyone during the offense;

6. That should the court determine Talbott's offense of being a felon in possession, on November 21, 1994, both as a matter of fact and law, did not involve Talbott shooting anyone, the court declare any such information in defendants records alleging such conduct to be inaccurate (specifically that found in the PIR;

7. That the court order defendants to immediately discontinue using the inaccurate information (i.e., that Talbott shot someone during commission of the instant "offense conduct") in all future decisions concerning Talbott;

8. That the court rule in Talbott's favor and declare the defendants to be in violation of Title 5 U.S.C.S. 552a(e)(5), by failing to maintain accurate records concerning Talbott, based on the law and facts of the instant cause of action;

9. That the court rule in Talbott's favor and declare that the defendants' failure to maintain accurate records concerning Talbott, and its continued use of the inaccurate information to make decisions adverse to him, authorizes the instant cause of action and application of Title 5 U.S.C.S. 552a(g)(1)(C);

10. That based on the applicability of section (g)(1)(C), and the facts of this case, the court determine whether the acts of defendants were willful or intentional. See **Sellers**, supra; also Title 5 U.S.C.S. 552a (g)(4)( ); also Title 28 C.F.R., Sec. 16.54; also Bureau of Prisons, Program Statement 5800.11, Section 15(c); and

11. That should the court determine defendants' actions were willful and/or intentional, damages in the amount of no less than one thousand dollars ($1000.00), and not more than twenty thousand dollars ($20,000.00), be awarded to Talbott in light of the violation of Section (g)(4).

Respectfully Submitted this 13th day of June, 2006

Richard Talbott
04895-028
Federal Correctional Inst.
P.O. Box 5000
Greenville, Illinois
62246

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION
94 DEC 13 PM 4: 14
SOUTHERN DISTRICT
OF INDIANA
A. VICTORIA THEVENOW
CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | )  CAUSE NO. NA 94-?1-CR |
| RICHARD DALE TALBOTT, | ) |
| Defendant. | ) |

INDICTMENT

Count 1

The Grand Jury charges that:

On or about November 19, 1994, at New Albany, Floyd County, Indiana, in the Southern District of Indiana, the Defendant herein,

RICHARD DALE TALBOTT

having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, that is, on June 10, 1991, RICHARD DALE TALBOTT, was convicted of Battery in the Circuit Court, Clark County, Indiana, in Cause Number 10C01-9103-CF046, did knowingly possess and receive a firearm, that is, a Glenfield, model 25, .22 caliber, bolt action rifle, serial number 72439593, which firearm had been shipped or transported in interstate commerce.

In violation of Title 18, United States Code, Sections 922(g)(1) and 924(e).

FILED
06 1194
JUN 29 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

EX. 1

Count 2

The Grand Jury further charges that:

On or about November 21, 1994, at New Albany, Floyd County, Indiana, in the Southern District of Indiana, the Defendant herein,

RICHARD DALE TALBOTT

having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, that is, on June 10, 1991, RICHARD DALE TALBOTT, was convicted of Battery in the Circuit Court, Clark County, Indiana, in Cause Number 10C01-9103-CF046, did knowingly possess and receive ammunition, that is, approximately 24 rounds of Winchester Super X, .22 caliber LR ammunition, which ammunition had been shipped or transported in interstate commerce.

In violation of Title 18, United States Code, Sections 922(g)(1) and 924(e).

A TRUE BILL:

_____
FOREPERSON

_____
Judith A. Stewart
United States Attorney

_____
Mark D. Stuaan
Assistant United States Attorney

06 1194

2

FILED
JUN 29 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex. 2

AO 245F (7/93) Modified (11/94) Sheet 1 - Judgment in a Criminal Case

# United States District Court
### SOUTHERN DISTRICT OF INDIANA

| UNITED STATES OF AMERICA | JUDGMENT IN A CRIMINAL CASE |
|---|---|
| V. | (For Offenses Committed On or After 11/1/87) |

Richard Dale Talbott        Case Number: NA 94-21-CR-01
(Name of Defendant)

Linda M. Wagoner
Defendant's Attorney

THE DEFENDANT:
- [ ] pleaded guilty to count(s) _____
- [ ] pleaded nolo contendere to count(s) _____ which was/were accepted by the Court.
- [x] was found guilty on count(s) 1 and 2 after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18:922(g)(1) and 924(e) | Felon in Possession of a Firearm | 11/19/94 | 1 |
| 18:922(g)(1) and 924(e) | Felon in Possession of Ammunition | 11/21/94 | 2 |

The defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

- [ ] The defendant has been found not guilty on count(s) _____.
- [ ] Count(s) _____ (is)(are) dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid.

Defendant's Soc. Sec. No.: 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

Defendant's Date of Birth: 06-10-64

Defendant's USM No.: 04895-028

Defendant's mailing address:

Marion County Jail
40 S. Alabama Street
Indianapolis, IN 46204

Defendant's residence address:

Same as above

June 9, 1995
Date of Imposition of Judgment

[signature]
Signature of Judicial Officer

Honorable David F. Hamilton
U. S. District Court Judge
Name and Title of Judicial Officer

JUN 14 1995
Date

06-1194

FILED
JUN 29 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

A-3

EX 3

Case 1:06-cv-01194-GK   Document 1   Filed 06/29/2006   Page 15 of 19

```
Citation            Rank(R)         Database         Mode
---F.3d----         R 1 OF 1        CTA7             Page
(Cite as: 1996 WL 100314 (7th Cir.(Ind.)))
```

UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Dale TALBOTT, Defendant-Appellant.
No. 95-2503.
United States Court of Appeals,
Seventh Circuit.
Argued Jan. 17, 1996.
Decided March 8, 1996.

Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. No. NA 94-21-CR-H/H--David F. Hamilton, Judge

Before BAUER, EASTERBROOK, and MANION, Circuit Judges.

PER CURIAM.
*1 A jury convicted Richard Dale Talbott of being a felon in possession of a firearm and of being a felon in possession of ammunition. 18 U.S.C. s 922(g)(1). The district court sentenced Talbott to 327 months' imprisonment, to be followed by five years of supervised release. He appeals his conviction and sentence. We have jurisdiction under 28 U.S.C. s 1291.
I
In the evening of November 19, 1984, Lori Klingsmith and Milton Ferrell drove to the Bridge Liquors store in New Albany, Indiana. Ferrell entered the store while Klingsmith waited in the car with her grandson. At about the same time, the defendant and his wife, Trudy Talbott, entered the store. While there, they encountered the defendant's cousin, Clarence Fuller.
Ferrell purchased a case of beer. He left the beer at the check-out counter while he went to pick out a bottle of bourbon. Fuller took the case of beer out of the store and placed it in the Talbotts' car. When Ferrell realized that his beer no longer was at the check-out counter, he exited the store and confronted the defendant. An argument ensued, during which Ferrell removed a knife from his pocket. Upon seeing the knife, Trudy Talbott handed the defendant a rifle from inside their car. The defendant pointed the rifle at Ferrell, who reentered the store and telephoned the police. The defendant thereupon returned the rifle to his wife.
At this point, Fuller approached the Talbotts' car to retrieve the case of beer. A struggle over the rifle developed among the defendant, Fuller, and Trudy Talbott. During the struggle, Fuller was shot in the neck and fell to the ground. The defendant took the rifle from his wife, ejected the spent casing, stood over Fuller, and threatened to kill him if he got up.
Fuller drove himself to the hospital for treatment of his gunshot wound. The defendant and his wife also went to the hospital, where the police arrested Trudy Talbott for attempted murder. The police recovered the loaded rifle and some ammunition from the Talbotts' car. The defendant told the police that he owned the rifle.
The following Monday, November 21, 1994, the defendant went to the Floyd County Courthouse, where his wife was being charged. Shortly after he arrived there, a detective arrested him for his involvement in the November 19 altercation. Following the arrest, the detective searched the defendant and

Copr. (C) West 1996 No claim to orig. U.S. govt. work

06 1194

FILED
JUN 29 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex. 4

found 24 rounds of ammunition in his pocket. Because Talbott had been convicted of felony battery in 1991, the federal government charged the defendant with two counts of being a felon in possession (of a weapon and of ammunition), in violation of 18 U.S.C. s 922(g)(1).

## II

At trial, the theory of defense was that the defendant justifiably possessed the rifle in order to prevent harm to himself and to his wife, and that he justifiably possessed the ammunition because he carried it to the courthouse to surrender it as evidence. The defendant tendered a self-defense instruction and what he termed a "good faith defense" instruction. The tendered instructions stated that the government had the burden to negate the defenses beyond a reasonable doubt. The district court determined that the defendant had raised both defenses sufficiently [FN1] and that instructions therefore were appropriate on each. In instructing the jury, however, the court stated that the defendant bore the burden of proving the defenses by a preponderance of the evidence. The defendant argues on appeal that the instructions, by shifting the burden of proof to him, amounted to reversible error. In reviewing jury instructions to which objections properly were raised in the proceedings below, we must determine, from looking at the charge as a whole, "whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." United States v. Donovan, 24 F.3d 908, 916-17 (7th Cir.) (citation omitted), cert. denied, 115 S.Ct. 269 (1994). We conclude that the challenged instructions misled the jury by impermissibly shifting the burden of proof to Talbott.

*2 The United States Constitution requires the government to prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] is charged." In re Winship, 397 U.S. 358, 364 (1970); Mason v. Gramley, 9 F.3d 1345, 1349 (7th Cir.1993). A jury instruction that shifts to the defendant the burden of disproving an element of the charged offense is unconstitutional. United States v. Toney, 27 F.3d 1245, 1250 (7th Cir.1994), citing Patterson v. New York, 432 U.S. 197, 215 (1977). However, federal and state legislatures may reallocate the burden of proof by labeling elements as affirmative defenses and stating that criminal defendants bear the burden of proving those defenses. Martin v. Ohio, 480 U.S. 228, 233 (1987); Patterson, 432 U.S. at 210; Eaglin v. Welborn, 57 F.3d 496, 500-01 (7th Cir.1995) (en banc); Mason, 9 F.3d at 1350. The Supreme Court has upheld this shifting of the burden of proof against constitutional challenges, reasoning that the federal Constitution requires that the government bear the burden only as to the elements of the charged crime and that the legislature's definition of the elements of a criminal offense usually is dispositive. Martin, 480 U.S. at 232-33; McMillan v. Pennsylvania, 477 U.S. 79, 85 (1986); Patterson, 432 U.S. at 201-02.

Using this power, Congress has shifted the burden of proving the affirmative defense of insanity. See 18 U.S.C. s 17(b) ("[t]he defendant has the burden of proving the defense of insanity by clear and convincing evidence"). Similarly, 18 U.S.C. s 2320(c) states that "[i]n a prosecution [for trafficking in counterfeit goods or services], the defendant shall have the burden of proof, by a preponderance of the evidence, of any [applicable] affirmative defense." See also 18 U.S.C. s 373(b) (defines "voluntary and complete" renunciation defense to charge of solicitation to commit a crime of

Copr. (C) West 1996 No claim to orig. U.S. govt. work

FILED
JUN 2 9 2006    06 1194
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex. 5

violence, and states that defendant has burden of proving the defense by a preponderance of the evidence). Compare 18 U.S.C. s 3146(c) (defines affirmative defense to charge of failing to appear, but does not allocate to defendant burden of proving defense).

Nevertheless, the fact that the Constitution allows Congress or state legislatures to enact laws allocating to criminal defendants the burden of proving affirmative defenses does not mean that, absent a statute actually doing so, the burden shifts automatically. In other words, though it may be constitutionally permissible to enact a burden-shifting statute, some affirmative legislative action must trigger that shift. See Mason, 9 F.3d at 1350 (noting that Supreme Court has approved state statutory schemes that "do not require the State to disprove every affirmative defense but that instead allocate to a defendant the burden of establishing his affirmative defense by a preponderance of the evidence"). Absent such a statute, the burden of proof remains on the government to negate beyond a reasonable doubt the affirmative defense properly raised by the defendant. See, e.g., Jacobson v. United States, 503 U.S. 540, 549 (1992) (entrapment defense); Mullaney v. Wilbur, 421 U.S. 684, 701, 704 (1975) (heat of passion defense); United States v. Read, 658 F.2d 1225, 1236 (7th Cir.1981) (withdrawal from conspiracy defense); United States v. Jackson, 569 F.2d 1003, 1008 n. 12 (7th Cir.), cert. denied, 437 U.S. 907 (1978) (self-defense). Thus, although a defendant may bear the burden of production as to an affirmative defense (that is, he must produce sufficient evidence to require its submission to the jury), see Toney, 27 F.3d at 1248, the burden of proof (or the burden of persuasion) remains on the government to negate that defense beyond a reasonable doubt, unless a statute affirmatively reallocates that burden of proof to the defendant.

\*3 We have not found, nor has counsel presented, any statutory predicate for the affirmative defenses raised in this case. "Self-defense" is not defined in the federal criminal code as a defense to the crime charged, that is, the crime of being a felon in possession. Instead, some circuits have recognized it as a matter of common law. [FN2] See United States v. Elder, 16 F.3d 733, 738-39 (7th Cir.1994); see also United States v. Singleton, 902 F.2d 471, 472 (6th Cir.), cert. denied, 498 U.S. 872 (1990); United States v. Lemon, 824 F.2d 763, 765 (9th Cir.1987); United States v. Panter, 688 F.2d 268, 271 (5th Cir.1982). Just as Congress has not defined the defenses by statute, neither has it enacted any statute allocating to the defendant the burden of proving the defenses asserted here. Because no law reallocated the burden of proof to Talbott, the prosecution had the burden not only of proving beyond a reasonable doubt the elements of the charged offenses but also of negating beyond a reasonable doubt the affirmative defenses raised by him. See Jackson, 569 F.2d at 1008 n.12. The district court incorrectly instructed the jury by telling them that Talbott bore the burden of proof on these defenses. Although the legislature may enact statutes shifting the burden of proof to the defendant on affirmative defenses, the district court does not have that authority. See United States v. Gaudin, 115 S.Ct. 2310, 2321 (1995) (Rehnquist, C.J., concurring) (federal and state legislatures may reallocate burdens of proof).

This circuit's pattern jury instructions support our conclusion. The pattern instructions on the insanity defense reflect that Congress by statute shifted

Copr. (C) West 1996 No claim to orig. U.S. govt. work

FILED
JUN 29 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

06 1194

Ex. 6

the burden of proof to the defendant. See 18 U.S.C. s 17(b); Federal Criminal Jury Instructions of the Seventh Circuit, Vol. III, Instructions 4.02 & 6.01a (1986). [FN3] In contrast, Pattern Instruction 6.01, which applies in cases involving affirmative defenses not defined by statute (or where the statute describing the defense does not affirmatively shift the burden of proof to the defendant), provides that the government must negate any issues raised by an affirmative defense beyond a reasonable doubt:

To sustain the charge of _____ the government must prove the following propositions:
  First:
  Second:
  Third:
  Fourth: (Negating any issues raised by an affirmative defense, e.g., self-defense.)

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all of the evidence that any of these propositions has not been proved beyond a reasonabl doubt, then you should find the defendant not guilty.

Similarly, the federal pattern instruction (issued by the Federal Judicial Center) on the defense of duress, which seems to us a close analogue to the affirmative defense raised in this case, states that "on this issue, just as o all others, the burden is on the government to prove the defendant's guilt beyond a reasonable doubt." Pattern Criminal Jury Instructions, Instruction 56 (1987).

*4 The prosecutor relies on our decision in Toney, asserting that the jury instructions properly placed on Talbott the burden of proving the affirmative defenses he raised. Yet Toney does not resolve this issue. First, Toney involved an instruction significantly different from the one at issue here. The Toney instruction stated that the government had the burden of proving beyond a reasonable doubt the absence of coercion. 27 F.3d at 1248. Here, by contrast, the instruction allocated to the defendant the burden of proving his defenses by a preponderance of the evidence. Second, the authority cited in Toney for the proposition that a defendant bears the burden of proving an affirmative defense addresses the reallocation of the burden by statutory enactment. Id. at 1251. For example, as we noted above, Congress by statute has shifted the burden of proving an insanity defense to criminal defendants asserting that defense. See 18 U.S.C. s 17(b). Similarly, both Martin and Patterson involved challenges to state statutes shifting to criminal defendants the burden of proving the affirmative defenses of self-defense and extreme emotional distress. Finally, nowhere in Toney did we suggest that, absent such a statute, the defendant must prove an affirmative defense by a preponderance of the evidence. Toney, therefore, does not save the government in this case.

III

The question remains whether the error requires a new trial. With respect to the conviction for carrying ammunition, it does not, and for a fundamental reason: Talbott was not entitled to a self-defense instruction (he was not under attack on the way to the courthouse), and there is no general defense of

Copr. (C) West 1996 No claim to orig. U.S. govt. work

FILED 06 1194
JUN 29 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT
Ex. 7

"good faith." Talbott does not explain the provenance of this defense, which neither this court nor any other court of appeals has recognized. Talbott could have told the prosecutor about the bullets; he did not have to carry them; and if a defendant can achieve his objective without violating the law, "the defenses will fail." United States v. Bailey, 444 U.S. 394, 410 (1980). Bailey deals with the defense of necessity, but the principle that everyone must comply with the law, if that can be accomplished without great cost to another vital interest, is general. So we held in Elder, 16 F.3d at 738, when rejecting an argument that a felon's possession of a shotgun for the purpose of turning it over to the police is not culpable. Elder observed that a defendant seeking to excuse such an act must show that "there are no reasonable legal alternatives to violating the law." Ibid. Elder himself argued necessity and self-defense, but nomenclature is unimportant. Apart from its relation to mens rea, therefore, "good faith" does not excuse noncompliance with a criminal statute. Talbott does not contend that the mens rea instruction in this case was defective. Even with the misstated burden, therefore, the instruction concerning "good faith" possession of the bullets was unduly favorable to defendant. It offered him more chance for acquittal than he was entitled to.

*5 With respect to possession of the rifle, however, the law of this circuit supported a self-defense instruction. Talbott testified that he "hear the click of a knife. [Ferrell] backed me all the way around to the passenger side of the car. And I stopped at the passenger side and he was cussing and threatening to cut me open." Only at that point, Talbott testified, did he receive the rifle from his wife. A jury might reject this testimony, or conclude that Talbott retained the weapon after the danger had passed, or infer from his statement that he owned the rifle that he possessed it at other times but these are the sort of questions the judge cannot preempt. The instruction placing the burden on defendant was therefore potentially dispositive.

The government finally contends that, even if the court did err, the error was harmless in light of the overwhelming evidence of Talbott's guilt. Sullivan v. Louisiana, 113 S.Ct. 2078, 2082-83 (1993), holds that an erroneous definition of "reasonable doubt" cannot be harmless error, because when the judge misstates the fundamental reasonable-doubt burden for elements of the offense, an appellate court cannot be confident that the jury decided anything at all under the correct standard. The judge must send all elements to the jury, even if the evidence is overwhelming; summary judgment cannot be granted in criminal cases. This approach does not imply that an incorrect allocation of the burden of persuasion cannot be deemed harmless. Several cases hold that it can be. See Rose v. Clark, 478 U.S. 570 (1986); Sandstrom v. Montana, 442 U.S. 510 (1979). Sullivan requires us to distinguish an error on the fundamental reasonable-doubt standard from errors on subordinate issues; the error here is in the latter category. And this is a statutory rather than a constitutional error, for there is no constitutional objection to giving Talbott the burden on his "defenses"--and it is entirely appropriate to let the judge serve as gatekeeper for affirmative defenses (for when there is no material dispute the judge may decline the defendant's request for an instruction). Thus the standard of harmlessness is the one in Fed.R.Crim.P. 52(a) rather than the strict standard of Chapman v. California, 386 U.S. 18 (1967).

Copr. (C) West 1996 No claim to orig. U.S. govt. works

FILED 06 1194
JUN 29 2006 Ex. 8
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT