Exhibit A

Date May 16, 2006

Dear Senator,

My name is Richard Talbott.

Currently, I am a federal prisoner being housed in the United States Federal Correctional Facility located in Greenville, Illinois.

I am contacting you/your office due to the fact that, as a Senator, you are a representative of the people.

The instant request is that you/your office commence an investigation into what I feel are discriminatory practices being engaged in at this facility with the passive consent of the warden, Sarah Revell, who simply turns a blind eye to any complaints concerning those she supervises.

## RELEVANT FACTS

On November 19, 1994, I possessed a firearm and on November 21, 1994, I possessed ammunition.

Both acts occurred after having been convicted of a felony crime.

And while my conduct was perfectly legal under state law (Indiana), I was indicted by the federal government, in December of 1994, and charged in count one with possessing the firearm on 11-19-1994 and, in count two with possessing the ammunition on 11-21-1994.

Exs. 1-2

I elected to go to trial; in which I claimed self defense, concerning the firearm charge and good faith concerning the ammunition (the first defense of which concerned a man who had pulled a knife on me and my (now deceased) wife and the second defense concerning me finding the ammunition in the trunk of my wife's car on November 21, 1994, and taking them to the local prosecutor's office).

The district court placed the burden of proof on me, to prove both of my defenses to the jury, before they could acquit me of the charges.

Thus, on February 15, 1995, I was convicted of both counts.

A Presentence Investigation Report (PIR) was ordered prepared for the purposes of sentencing, which was performed by the U.S. Probation Department for the Southern District of Indiana (at Indianapolis).

In this PIR, the alleged conduct concerning the firearm count was contained in paragraphs 4 through 9, and the alleged conduct concerning the ammunition count was contained in paragraph 10.

Inexplicably (and contrary to all of the testimony ever given in the criminal case), the probation officer alleged that the conduct concerning the firearm count involved me shooting someone with the firearm on November 19, 1994.

At sentencing the district court (U.S. District Court for the Southern District of Indiana, at Indianapolis) enhanced my federal sentence based on this allegation.

On June 9, 1995, I was sentenced to concurrent terms of twenty seven (27) years imprisonment. on both counts.

I appealed the firearm conviction, which was listed as count one in the Judgement & Commitment.

Ex. 3

I also appealed the sentence.

The United States Court of Appeals for the Seventh Circuit ruled (1) that the firearm conviction was obtained in violation of my constitutional right to a fair trial and (2) that the sentence was illegal in that the court enhanced it based on conduct I was neither charged with nor convicted of.

More specifically, the appellate court found that whether or not I had shot anyone with the firearm, on November 19, 1994, was "irrelevant to the federal charges." See United States v. Talbott, 78 F.3d 1183 (7th Cir. 1995).

Exs. 4-11

To make a long story short, on remand the district court officially ordered count one (the firearm charge) dismissed July 3, 1996.

Ex. 12

An amended judgement & Commitment order was entered in which the firearm charge (count one) was removed and, on July 10, 1996, I was resentenced on the ammunition charge to twenty two (22) years imprisonment.

Ex. 13

The first eight (8) years, three (3) months, of my sentence were served in the maximum security United States Penitentiary located in Terre Haute, Indiana.

In September, 2003, however, I was given a "lesser security" transfer to the Greenville facility, where I have been for approximately three (3) years and, I must say, I have never encountered the degree of discrimination and unfairness anywhere else in my life to the degree I have at this institution.

For instance, one of the issues staff at this facility (called 'unit teams') are to consider when holding custody/security classification hearings is the severity of an inmate's 'current offense.'  See Program Statement 5100.07.

2

The lower the offense severity rating, the better for the inmate and his ability to be considered for better programs, housing, less supervision, furloughs, etc..

The Bureau of Prisons (BOP) defines the term "current offense" in Program Statement 5100.07, in relevant part, as:

> "...the most severe offense for which the inmate is satisfying his or her legal confinement obligation."

Ex. 14

Therefore, as I am simply in prison for conduct which consisted of my possessing ammunition on November 21, 1994 (as contained in paragraph 10 of the PIR), my offense severity rating should be that of "Moderate" severity.

However, my unit team members and the warden over this facility do not see it that way officially (although they quickly agree with this conclusion 'off the record'):

Officially, according to staff members here in the Greenville facility, since the alleged conduct concerning the firearm is still in my PIR (that I shot someone on November 19, 1994) this conduct should also be considered part of my current offense.

Therefore, in 2004, I sought to challenge that part of my PSI (located in my Inmate Central File here at Greenville), as being inaccurate, pursuant to the Privacy Act of 1974.

Pursuant to BOP Program Statement 5800.11, I submitted the relevant information to my unit team members (specifically, Mr. Pete Pottios, Unit Manager), with the necessary exhibits, in an effort to have the records maintained concerning me, corrected through verification by the district court or probation office which handled my criminal case. See Criminal Case # NA94-21-CR-01-H/H.

Simply put, this Program Statement requires that, should I wish to challenge information in my central file as being inaccurate I am to present the challenge, and supporting evidence, to the relevant member (in this case Mr. Pottios).

Staff (Mr. Pottios) is then to contact the relevant agency, court, prosecutor's office, etc., in an effort to verify the information/evidence.

Should the evidence be verified (thus, discrediting the challenged information) staff is to attach both the contact letter, and the response, to my file and not use the discredited information concerning any future decisions relating to me.

Rather than seek verification, as required by Program Statement 5800.11, of the evidence I submitted to him in support of my challenge, Mr. Pottios advised me to file a formal objection to the PIR and seek to have the report revised.

3

## Conclusion

The Privacy Act of 1974 requires that each agency keeping a system of records must maintain those records with "such accuracy, relevance, timeliness, and completeness as is reasonably necessary" to assure fairness to an individual. See Title 5 United States Code, Section 552a (e)(5); also Title 28 C.F.R., Sec. 16.54(e).

If an agency willfully or intentionally fails to maintain records in such a manner and, as a result, makes a determination adverse to an individual, it will be liable to that person for money damages. See Title 5 United States Code, Section 552a(g)(1)(C), also Title 5 United States Code, Section (g)(4).

Because the challenged information in my Inmate Central File is/was capable of being eerified (as making up part of my current offense conduct), and the information presented in support of my challenge to that information is/was capable of being verified by the BOP, the Federal Bureau of Prisons is in clear violation of the above-mentioned sections of the Privacy Act of 1974, Title 28 C.F.R., Sec. 16.54, and Bureau of Prisons Program Statement 5800.11, by refusing to take "reasonable steps" to ensure the accuracy/correctness of that information.

Based on the fact that the Bureau of Prisons is using the inaccurate information, still, to make decisions adverse to myself, in light of the evidence submitted to staff, which indicates the information is inaccurate (as acknowledged by staff), the Bureau of Prisons is willfully and intentionally in violation of Title 5 USCS 552a(e)(5).

Based on the above, I request that, as a United States Senator, you/your office investigate the instant complaint due to the fact that the conduct being engaged in by Mr. Pottios and the warden is not only occuring with respect to us inmates lucky enough to interepret the program statements, but should you/your office investigate, you will find a disproporionate number of inmates who are so-called 'people of color' (as I am) are being severely discriminated against as a result of their ignorance.

I do not make this accusation lightly, as I know the easy fall-back many people, who are not being discriminated against, use in order to get attention by using this issue.

However, neither my instant claim (nor the facts concerning my situation) can be seriously disputed and, I feel, deserve at least a review by your office.

                   Thank you.

                   Respectfully submitted,

                   *Richard Talbott*

08/10/06  10:00 FAX 312 886 3514    SENATOR BARACK OBAMA    ☒003/007

JUL 12 2006

Ps:

As the instant communication was recently returned to me *without* the exhibits, I have to contact my friend and have her mail me another copy.

However, as I seek your review of my situation as early as possible, I am still sending the complaint - originally prepared May 16, 2006

Respectfully

Richard Allbott
09895-028
Fed. Corr. Inst.
P.O. Box 5000
Greenville, Il.
62246