Exhibit F

TO.

## THE HONORABLE SENATOR
## BARACK OBAMA

"The Safeguards of our liberty are not so much in danger
from those who openly oppose them, as from those who –
professing to believe in them – are willing to ignore
them, when found convenient for their own purposes."

The Goals Of Democracy – A Problem's Approach

TO. THE HONORABLE BARACK OBAMA                     September 5, 2006
    UNITED STATES SENATOR
    230 S. DEARBORN (St. 3900)
    CHICAGO, ILLINOIS    60604

By. RICHARD DALE TALBOTT
    REG.NO. 04895-028
    P.O. BOX 5000(H1A)
    GREENVILLE, ILLINOIS    62246

RE. RESPONSE OF FCI/GREENVILLE WARDEN, SARAH REVELL, CONCERNING
    ALLEGATION OF DISCRIMINATORY PRACTICES RELATING TO CUSTODY
    CLASSIFICATION    CALCULATIONS    BEING    ENGAGED    IN    AT
    INSTITUTION.

Dear Senator Obama,

        May all be well for the Senator from Illinois.

    I trust that Your most recent trip to Africa was as
successful as anticipated, and that Your family is well also.

    The purpose of the instant correspondance is to reply to
the response recently prepared by warden Sarah Revell, who is
currently the Chief Executive Officer here at the Greenville
Federal Correctional Facility.

    I must confess, with all due respect, that I was perfectly
willing to simply wait on the Senator's response to my May 16,
2006, inquiry, however, based on the refusal of staff at this
facility to give me a copy of the Senator's communication and
their response, I now realize that the instant letter is req-
uired.    Ex. 1

    Indeed, after finally obtaining a copy of the Senator's in-
quiry and the response by the warden, it has become crystal
clear why I was denied access to the response, for, despite

the numerous woes experienced by this facility while under warden

Revell's watch (the latest of which resulted in two officers

being indicted on allegations of criminal activity, including

that of lying to federal investigators to cover-up their criminal

offenses), it is apparent that deceiving superior officers who

expect honest answers is **still** not high on their list of goals

to achieve.

If I sound "disgruntled" or upset, I apologize, for that

is not my intent Senator.

I am more disappointed than anything, for while my request

to The Senator was straighforward, and His inquiry to the warden

was quite simple, the warden has taken it upon herself to attempt

to assasinate my character and to imply that I am a danger to

society, somehow, by reliance on battery charges which are 15,

20 and 22 years old in an effort to sway The Senator that the

discrimination I complained of is somehow justified.

Not only do I ask The Senator not to be swayed by such an

elementary attempt, but I also request that The Senator from

Illinois not become a part of the injustice complained of as

a result of ignorance.

The communication I sent The Senator on May 16, 2006, requested

that an investigation be commenced at this institution based on

what I feel to be discriminatory practices occurring here.

More specifically, the communication stated as follows;

> **"The instant request is that you/your office commence an**
> **investigation into what I feel are discriminatory practices**
> **being engaged in at this facility with the passive consent**
> **of the warden, Sarah Revell, who simply turns a blind eye**
> **to any complaints concerning those she supervises."**

Ironically, approximately two months later, two officers under warden Revell's supervision were indicted by the government and charged with assault on an inmate here, then lying to federal agents in an effort to cover up their criminal actions.

Inexplicably, the warden seeks to soil my character in The Senator's eyes with convictions which have already been fully taken into account when scoring my custody classification.

Why warden Revell did not seek to dirty my name and character with my conduct engaged in while here at the federal institution is understandable, however.

For instance, while here, I have earned credits towards college, graduated from the OSHA Safety and Health Outreach Training Program, and The Residential Values Program, which consisted of 180 days of classes and 360 hours.

Indeed, I was elected (out of 35 people) to give the graduation speech.

I am not only a Team Leader (and member of) the Suicide Prevention Program here at the institution, but have been for approximately three years.

Most recently, I sought to have my sentencing court commute my sentence in order that I may re-enlist in the United States Marine Corps., in an effort to help my country.

Upon being advised to contact the President of the United States to achieve this goal, I promptly filed for commutation of my sentence with the Board of Pardons and Paroles.

**Why warden Revell did not see fit to inform you of these accomplishments and attempts (which also reflect on my character) is understandable indeed, for they stand as proof that people are subject to changing their lives.**

I also notice in the warden's response that she claims;

"In reviewing his PSI report, it involves Mr. Talbott pointing a rifle at the victim and later wrestling the victim for the rifle. This resulted in the victim being shot in the neck."

This is an untrue statement by the warden, Senator, for not only does the PSI report clearly reflect that there "are no identifiable victims of the offense," but the district court judge and the prosecutor on my case specifically instructed the jury that I was neither charged with, nor accused of, shooting anyone with the firearm.

Indeed, if the warden would take time to read my many, many requests, she would have found that the United States Court of Appeals for the Seventh Circuit even verified that there was never a finding that I had shot anyone.

Moreover, the United States Court of Appeals found that whether or not I shot anyone was immaterial to the firearm charge (a charge which was dismissed in 1996, by the district court).

Both the records officer and the former Case Management Coordinator have verified the dismissal of the firearm charge and that I should not be being scored as a "greatest severity" offender, however, black inmates such as myself are treated like so much luggage in this facility when it comes to being treated fairly by Greenville staff.

Since my quest to be treated fairly, at least eleven caucassion inmates (who have firearm convictions) have shown me that their offenses were graded as "moderate severity" offenses, thus, the warden is not being completely truthful stating _ my conduct for possessing ammunition was a greatest severity offense or that it involved a "victim."

Nor can warden Revell claim that my conduct here at the FCI/ Greenville, has been negative, for all of my progress reports reflect nothing but positive adjustment since being here and as far as my somehow being a threat to society is concerned, not all people are of the opinion of warden Revell (that I should forever be punished for acts of indiscretion while in my twenties). Exs. 2-22.

As far as my offense is concerned, I stand by my decision to do what is right no matter what the circumstances are, as my essay (required for the Values Program) reflects. Exs. 23-24.

Thus, with The Senator's permission (and assuming that attempts at character assasination are completed), I wish to focus on the issue which resulted in the Senator's inquiry to begin with, and let Him make up his own mind in an objective manner.

In closing, I would like to thank the Senator for taking the time to inquire about my concerns and to bring it to his attention that the appeal mentione in warden Revell's response was not a "government appeal" (which indicates that I somehow was awarded dismissal of the firearm count as a result of working for the U.S. Attorney).

The definition of "Current Offense" in Program Statement 5100.07 states that;

> "For the purposes of classification, the current offense is the most severe offense for which the inmate is satis-fying his or her legal confinement obligation."

As the warden (and every other staff member here) knows, I am only serving one sentence for one crime, which occurred on November 21, 1994, and consisted of me finding 24 rounds of .22 ammunition and turning them in to police. Exs. 25-26

As reflected in the Presentence Investigation Report, there "**Are no identifiable victims of the offense.**"

To the extent, the warden has informed the Senator that the probation office refuses to alter or amend my presentence report, this response is misleading for Program Statement 5800.11 specifically informs the warden that the report **cannot be altered without court order.**

Therefore, staff are to take reasonable steps to make sure the information submitted by me is true, **which is exactly what warden Revell and her staff refuse to do based on the fact that the verification will result in my offense severity score being reduced (making me eligible for lower security institutions).**

This is because, should the information I submit be found to be true, then staff are required to correct my central file (i.e., prohibited from using the inaccurate information in any future decisions regarding myself). Exs. 27-30

Senator Obama, I have not seen my mother in over twelve (12) years, and my wife died in 1998, which makes the instant request not only important, but the instant communication even harder to prepare (especially when I realize that the warden is so intent on denying me fair treatment that she would mislead and engage in deceptive practices involving a U.S. Senator).

I will end this letter, however, I ask that the evidence I have presented at least be considered by Your office with fairness.

Thank you, for your time, and assistance concerning this matter.

Respectfully yours,

*Richard Helliott*

Reg.No. 04895-028

6

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Mr Pickens /HIA UNIT MGR | DATE: 8-17-2006 |
|---|---|
| FROM: Richard Thirott | REGISTER NO.: 04895-028 |
| WORK ASSIGNMENT: Psychology | UNIT: HIA |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

On August 17, 2006 you told me the form is a
"Congressional Release" but the HIA Building Supe. Sweeney
confirmed. I request a copy of both the form and any
returned back the "Congressional Release" I signed and
to receive the "Congressional Release" in effect.

Richard Thirott
04895-028
HIA

(Do not write below this line)

DISPOSITION:

On 08-17-2006, I informed you that Senator Barack Obama had
requested information about your custody classification scoring.
You were asked to sign a release of information form so that a
response could be given to Senator Barack Obama pertaining to the
correspondence you sent to him.  It was not a "Congressional
Release Document".  Mr. Obama will be responding to your
correspondence.

| Signature Staff Member | Date 8/22/06 | EX-1 |
|---|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)                This form replaces BP-148.070 dated Oct 86
                                                    and BP-S148.070 APR 94

# American Management Association

### is proud to award

# Richard Talbott

the following educational credits

in recognition of the successful completion of

## Creative Problem Solving

May 13, 2005

1    Continuing Education Units (CEU)

**AMA**

American Management
Association®

1601 Broadway, New York, NY 10019

AMA President and Chief Executive Officer

Certification Officer

The American Management Association is a not-for-profit educational organization
incorporated by the Board of Regents of the University of the State of New York.



AP 8570

Ex-2



**American Management Association®**

Educational Services
P.O. Box 359
Natick, MA 01760
508.653.2337 Phone
508.653.6009 fax
ed_svcs@amanet.org

5/13/05

ATTN: JASON ENGEL
Richard Talbott
FCI GREENVILLE
P O Box 4000
Greenville, IL  62246

Dear Richard,

Congratulations on completing the multiple-choice test for the American Management Association Self-Study Program:

Creative Problem Solving

Your Score: 100 %

If you have any questions, please contact a staff member in Educational Services between the hours of 9:00am and 5:00pm EST, Monday through Friday. Our e-mail address is **ed_svcs@amanet.org** and the telephone number is 1-800-225-3215 or 508-653-2337. To see a list of AMA's products and services offered visit www.amanet.org.

Please note that the address for testing has changed. Kindly use the address provided on this letter and keep it for future reference.

The Certificate of Completion will follow in approximately two to four weeks.  Again, we congratulate you on your achievement.

Sincerely,

AMA Educational Services

Atlanta • Brussels • Chicago • London • Mexico City • New York • San Francisco
Shanghai • Tokyo • Toronto • Washington, DC

Ex-3

# OSHA
## 10-HOUR GENERAL INDUSTRY
## SAFETY & HEALTH
## OUTREACH TRAINING PROGRAM

PRESENTED TO

# RICHARD TALBOTT

INTRODUCTION TO OSHA
PERSONAL PROTECTIVE EQUIPMENT
HAZARD COMMUNICATION
FLAMMABLE AND COMBUSTIBLE LIQUIDS

MEANS OF EGRESS AND FIRE PROTECTION
ELECTRICAL AND LOCKOUT/TAGOUT
WALKING AND WORKING SURFACES
MACHINE GUARDING

November 20-26, 2003

Don Padgett, Safety Specialist
INSTRUCTOR

Ex-4

# CERTIFICATE OF COMPLETION

This is to certify that

## *Richard Talbott*

has successfully completed the

# Residential Values Program

Issued June 9, 2005.



Jason W. Engel, Psy.D.
Program Coordinator



Glenn R. Young, Psy.D.
Chief, Psychology Services

Ex 5

June 22, 2005

Here is the graduation speech given by me, on June 9, 2005, and the certificate of completion.

The class was 180 days long, and consisted of 360 hours of classes.

I was chosen to give the speech (out of 35 people by the way) based on their belief that I was the best speaker.

The other certificate represents the fact that I completed a college course in "Problem Solving."

Hope you're proud in knowing that I am not just sitting around here watching the corn grow (smile).

I love and miss you.

Ex-6

### GRADUATION SPEECH
### VALUES PROGRAM
### " CLASS OF 21 "

Let me begin by saying "congratulations" to the Class of 21 which, I'm told, is the rotation we represent.

When being interviewed for placement in the Values Program, I remember being asked what it was I expected to gain from the program.

Rather than "keeping it real," as I'm so fond of advising others, I told only half the truth (or half a lie, depending on how you look at it).

Instead of admitting that I was looking, primarily, for peace and quiet, and the benefit of living in a unit with a smaller number of inmates, I remember answering that I expected to gain new sets of principles (news ways of thinking) due to my belief that my ways of thinking and the principles associated with them were too hard for one person to teach society in one lifetime.

However, within the third week of the program, I began to realize that nothing was so much wrong with the principles I believed in and lived by as much as with the attitude I possessed when dealing with situations which conflicted with my beliefs, my principles, and the code of conduct I'd worked so hard to perfect all my life.

To some of us, the Values Program may represent a 'bit of Heaven' in a very warm place (after all, it consists of two man cells and, at times, offers residents the distinct ability to observe families pick-nicking, playing baseball and cooking out, all less than 200 yards away.

Ex-7

However, for those of you enrolled in the Class of 22, I m living proof that the Values Program also offers a rare opportunity to gain valuable insight into the reasons we engage in the type of behavior which, to most of us, seems so justified, yet, to others, is clearly so inappropriate, antisocial, and illegal.

More importantly, the Values Program offers a rare opportunity to change your outlook, and behavior, when dealing with situations which, in the past, have constantly landed us in environments such as the one we currently live in.

In reality, I realize that the Values Program is not for every one, and that I may appear to be the proverbial poster child for the program.

If so, then the program has served its purpose for existing, but, more importantly, it has served my purpose, for it offered me the chance to change the way I approach situations which, in the past, always caused nothing but hardship and suffering.

Briefly, I would like to thank Dr. Engle and the other staff members who are responsible for the program s existence, also the Mentors, without whom the opportunities to test my new found insight and knowledge would not have presented itself for hands on application so often.

In closing, I would leave you with this bit of advice from one of my favorite writers, as I know that being in the Values Program alone has its own social drawbacks in this kind of environment;

> "Keep away from people who try to belittle your ambitions.
> Small people always do that. But, the really great make
> you feel that you, too, can become great." Samuel Langhorn

Clemens (a/k/a/ "Mark Twain")

Again, congratulations, good luck, and thank you for your time.

Richard Talbott
June 9, 2005

Ex-8

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

CHAMBERS OF
JUDGE DAVID F. HAMILTON

BIRCH BAYH U.S. COURTHOUSE
ROOM 330
46 EAST OHIO STREET
INDIANAPOLIS, INDIANA  46204

February 16, 2006

Mr. Richard Talbott
#04895-028
Federal Correctional Institution
P.O. Box 5000 (HIA)
Greenville, Illinois  62246

Dear Mr. Talbott:

Thank you for your letter of February 13, 2006 seeking a commutation of the remainder of your sentence on the condition that you re-enlist in the United States Marine Corps.

After the courts decide your sentence, only the President of the United States has the power to commute your sentence as you have proposed.  I have long since lost any authority over your sentence.

Sincerely yours,

David F. Hamilton

DFH/jm

Ex-9

# Petition for Commutation of Sentence

*Please read the accompanying instructions carefully before completing the application. Type or print the answers in ink. Each question must be answered fully, truthfully and accurately. If the space for any answer is insufficient, you may complete the answer on a separate sheet of paper and attach it to the petition. You may attach any additional documentation that you believe is relevant to your petition. The submission of any material, false information is punishable by up to five years' imprisonment and a fine of not more than $250,000. 18 U.S.C. §§ 1001 and 3571.*

**Relief sought:** *(check one)*

☑ Reduction of Prison Sentence Only      ☐ Reduction of Prison Sentence and Remission

☐ Remission of Fine and/or Restitution Only      ☐ Other _____

## To The President of the United States:

The undersigned petitioner, a Federal prisoner, prays for commutation of sentence and in support thereof states as follows:

1.    Full name: <u>Richard</u>    <u>Dale</u>    <u>Talbott</u>
                  *First*            *Middle*         *Last*

   Reg. No. <u>04895-028</u>     Social Security No. <u>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</u>

   Confined in the Federal Institution at <u>Greenville, Illinois</u>

   Date and place of birth: <u>New Albany, Indiana (6-10-1964)</u>

   **Are you a United States citizen?**         ☑ yes ☐ no
   *If you are not a U.S. citizen, indicate your country of citizenship*

   <u>not applicable</u>

   **Have you ever applied for commutation of sentence before?**    ☐ yes ☑ no
   *If yes, state the date(s) on which you applied, and the date(s) when you were notified of the final decision on your petition(s).*

   <u>not formally (wrote a personal letter to the pre-</u>
   <u>sident in February, 2006, but received no answer.</u>

### Offense(s) For Which Commutation Is Sought

2.    I was convicted on a plea of <u>not guilty</u> in the United States District Court
                          *(guilty, not guilty, nolo contendere)*

   for the <u>Southern</u>    District of <u>Indiana</u>    of the crime of:
         *(Northern, Western, etc.)*           *(identify state)*

Ex-10

**Offense(s) For Which Commutation Is Sought**

*Felon in Possession of Ammunition, in violation*
(State specific offense(s); provide citation of statute(s) violated, if known)

*of title 18 USCS 922(g)(1).*

I was sentenced on _Ob-9_ , _1995_ to imprisonment for _22 years_ , to pay
                        (month/day)   (year)                    (length of sentence)

☐ a fine of $ _N/A_ , ☐ restitution of $ _N/A_ , and to
            (do not include special assessment)

☑ supervised release or ☐ special parole for _5 years_ , and/or to probation for

_N/A_ . I was _30_ years of age when the offense was committed.
(length of sentence)

3.   I began service of the sentence of imprisonment on _11-21_ , _1994_ , and I am projected to
                                                          (month/day)  (year)

be released from confinement on _11-09_ , _2014_ .
                                  (month/day)  (year)

**Are you eligible for parole?**                                              ☐ yes ☑ no
*If yes, indicate the date when you became eligible for release, and state whether your application for parole was
granted or denied*

**Have you paid in full any fine or restitution imposed on you?**             ☐ yes ☐ no
*If the fine or restitution has not been paid in full, state the remaining balance.*

                    *not Applicable*

4.    **Did you appeal your conviction or sentence to the United States Court of
Appeals?**                                                                     ☑ yes ☐ no

**Is your appeal concluded?**                                                  ☑ yes ☐ no
*If yes, indicate whether your conviction or sentence was affirmed or reversed, the date of the decision, and the
citation(s) to any published court opinions.  Provide copies of any unpublished court decisions concerning such
appeals, if they are available to you.*

*Eventually affirmed on March 8, 1996 (United
States v. Talbott, 78 F.3d 1183 (7th Cir 1995)).*

**Did you seek review by the Supreme Court?**                                  ☐ yes ☑ no

**Is your appeal concluded?**                                                  ☑ yes ☐ no
*If yes, indicate whether your petition was granted or denied and the date of the decision.*

*Certiorari not Sought*

Ex-11

**Offense(s) For Which Commutation Is Sought**

**Have you filed a challenge to your conviction or sentence under 28 U.S.C. § 2255 (habeas corpus)?**                                                              ☑yes ☐no

**Is your challenge concluded?**                                                           ☑yes ☐no

*If yes, indicate whether your motion was granted or denied, the date of the decision, and the citation(s) to any published court opinions, if known. Provide copies of any unpublished court decisions concerning such motions, if they are available to you. If you have filed more than one post-conviction motion, provide the requested information for each such motion.*

Motion denied (January, 1998). See attached. A-H Numerous Motions filed but merits never reached by court — proceeded in pro se! not available!

5.   **Provide a complete and detailed account of the offense for which you seek commutation, including the full extent of your involvement. If you need more space, you may complete your answer on a separate sheet of paper and attach it to the petition.**

On November 21, 1994, I found approximately 24 rounds of .22 caliber Ammunition and took them to the local prosecutor's office in an effort to turn over to authorities.
I was turned away by authorities, but before I could seek other law enforcement authorities I was arrested and the ammunition was given to Federal authorities.
I was indicted on December 13, 1994 and charged. I always admitted to the statutory elements of the offense (both to the trial judge 2 weeks before trial and to the jury at trial).
On February 15, 1995, I was convicted and on June 9, 1995, found to be an Armed Career Criminal and sentenced to 22 years imprisonment on July 10, 1996.

Ex-12

**Other Criminal Record**

6.   **Aside from the offense for which commutation is sought, have you ever been arrested or taken into custody by any law enforcement authority, or convicted in any court, either as a juvenile or an adult, for any other incident?** ☐ yes ☐ no

*For each such incident, provide: the date, the nature of charge, the law enforcement authority involved, and the final disposition of the incident. You must list every violation, including traffic violations that resulted arrest or in an criminal charge, such as driving under the influence.*

**Arrests:**

Numerous Misdemeanors prior to 1991;
Felony Arrests
1986: Battery (2 counts in same week and committed against same person.)

1991: Battery

**Convictions:**

1986 (above); 21 yrs old
1991 (above) 26 yrs old

Ex-13

**Reasons for Seeking Clemency**

7.   State your reasons for seeking commutation of sentence.  If you need more space, you may
complete your answer on a separate sheet of paper and attach it to the petition.

Please See Attached.

EX-14

Reasons For Seeking Clemency
(Question # 7)

Approximately eleven (11) years ago I found 34 rounds of ammunition, which were perfectly legal for me to possess under Indiana law.

This fact notwithstanding, I had no desire to possess the ammunition and only had them long enough to get rid of them (at least attempt to get rid of them).

On November 21, 1994, I found the ammunition in the trunk of my (now deceased) wife's car. I attempted to get them to the prosecutor's office, but was turned away twice.

Eventually, I was directed to a courtroom by an investigator, where I was arrested by police. The ammunition was given to Federal authorities who had me indicted.

I've admitted to all concerned that I possessed the ammunition (judge, jury, prosecutor etc.,) + have never denied the statutory elements of the offense.

I received 33 years in prison.

My wife passed away in 1998, I haven't seen my mother in over 10 years and have still been able to avoid sitting around idle while in prison. See exhibits I-L

I admit that I have committed a crime under Federal law.

Ex-15

Most recently (realizing life would hold no worthwhile future for me should I be forced to serve the complete sentence), I contacted my sentencing judge seeking to have my sentence commuted in order to re-enlist in the U.S. Marine Corps. See exhibit M.

I was directed to contact the President at this time — which I attempted by letter, but this communication was never replied to.

I have served over 11 years in prison for simply doing what I thought was right at the moment.

If it hadn't been for my status at the time, my conduct would have been perfectly legal.

Eleven plus years for my offense is more than enough punishment & I feel I should be allowed to serve out the remainder of said time, IF nothing else, fighting for my country if not granted a commutation of my sentence outright.

Thank you
Respectfully

Richard O'Abbott
#04895-028

Ex-16

## Certification and Personal Oath

    I hereby certify that all answers to the above questions and all statement contained herein are true and correct to the best of my knowledge, information, and belief.  I understand that any intentional misstatements of material facts contained in this application form may cause adverse action on my petition for executive clemency and may subject me to criminal prosecution.


Respectfully submitted this _20th_ day of _April_ , _2006_.
                                          *(month)*        *(year)*


                                          *Signature of Petitioner*

Ex-17

U.S. DEPARTMENT OF JUSTICE **PROGRESS REPORT**

Federal Bureau of Prisons

| Institution:<br>FCI Greenville, IL | Date:<br>May 8, 2006 |
|---|---|

**Inmate Reviewed and/or Received Copy**

_____  *5/8/06*  _____
Inmate's Signature    Date    Staff Signature

*I.   Type of Progress Report*

Initial: _____    Statutory Interim: _____    Pre-Release: _____

Transfer: _____    Triennial: __XXX__    Other (Specify): _____

| 2.  Name:<br>TALBOTT, Richard | 3.  Register Number:<br>04895-028 | 4.  Age (DOB):<br>41 (06-10-1964) |
|---|---|---|

5.  Present Security/Custody Level:
Medium/In

6.  Offense/Violator Offense:
Felon in Possession of Ammunition.

7.  Sentence:
264 months PLRA Sentence, 5 years supervised release and a $50.00 felony assessment.

| 8.  Sentence Began:<br>06-09-1995 | 9.  Months Served:<br>131 month + 200 days JCT | 10. Days GCT or EGT/SGT:<br>540 GCT |
|---|---|---|
| 11. Days FSGT/WSGT/DGCT:<br>54 days DGCT | 12. Projected Release:<br>03-09-2014 via GCT Release | 13. Last USPC Action:<br>N/A |

14. Detainers/Pending Charges:
None Known

15. Codefendants:
Refer to Pre-Sentence Investigation Report

cc:  Inmate's Central File
U.S. Probation Office
Parole Commission Regional Office (in old law cases only)
Inmate

Ex-18

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS
FCI, GREENVILLE, IL

PROGRESS REPORT                                                                    PAGE 2

INMATE NAME: **TALBOTT, Richard**        REG. NO.: 04895-028        DATE: May 8, 2006

16. **INSTITUTIONAL ADJUSTMENT:** Inmate Talbott arrived at FCI Greenville, Illinois on September 3, 2003 as a lesser security transfer from USP, Terre Haute, Indiana. He has made an good adjustment to confinement since his arrival.

A. <u>Program Plan:</u> Inmate Talbott's unit team has recommended that he participate in Recreational and Educational Programs, Obtain his GED, complete Drug Education, and obtain suitable employment. It was also recommended that he save funds for release and maintain clear conduct.

B. <u>Work Assignments:</u> Inmate Talbott is currently unassigned currently. He has previously work for Psychology as an Orderly, CMS, Recreation, Safety, Education, and Food Service where he received satisfactory work evaluation from his detail supervisors.

C. <u>Educational/Vocational Participation:</u> Inmate Talbott completed his GED at USP, Terre Haute, Indiana on July 18, 1995. He has also completed OSHA 10 hour Certification Program and Barbering.

D. <u>Counseling Programs:</u> Inmate Talbott has completed the Residential Values Program on June 9, 2005.

E. <u>Incident Reports:</u> Inmate Talbott has received the following incident reports:

| Date | Incident | Disposition |
|------|----------|-------------|
| 06-02-1998 | 201/Fighting with Another | DHO: DGCT 27 days, and DS 30 days. |
| 06-02-1998 | 222/Possessing Intoxicants | DHO: DGCT 27 days, DS 15 days, and LP COMM 60 days. |
| 08-14-1997 | 330/Being Unsanitary | UDC: LP Quarters 180 days, and LP COMM 30 days. |
| 03-20-1997 | 327/Contacting Public W/O Auth. | UDC: LP Visiting 6 months. |
| 05-03-1997 | 407/Violating Visiting Regulations | UDC: LP COMM 90 Days, and LP Visiting 90 days. |
| 11-15-1995 | 327/Contacting Public W/O Auth. | LP COMM 15 days. |

F. <u>Institutional Movement:</u>

| Date | Institution | Reason |
|------|-------------|--------|
| 06-10-2002 | FCI, Greenville, Illinois | Lesser Security |
| 06-27-1995 | USP, Terre Haute, Indiana | Initial Designation |

G. <u>Physical/Mental Health:</u> Inmate Talbott is currently classified as regular duty status and regular housing status with no medical restrictions. He should be considered fully employable upon release.

H. <u>Progress on Financial Responsibility Plan:</u> Inmate Talbott has completed his obligations in the Financial Responsibility Program.

Ex-19

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS
FCI, GREENVILLE, IL

PROGRESS REPORT                                                                                    PAGE 3

INMATE NAME: TALBOTT, Richard        REG. NO.: 04895-028        DATE: May 8, 2006

17.    **RELEASE PLANNING:**

    a.    Residence -        To be secured.

    b.    Employment -       To be secured.

    c.    Sentencing District -    Barb Roembke, Chief
                                     United States Probation Office
                                     Southern District of Indiana
                                     101 U.S. Courthouse
                                     46 East Ohio Street
                                     Indianapolis, Indiana 46204
                                     (608) 261-5767

    d.    Pre-Release Programming - Inmate Talbott will be referred to the Release Preparation Program approximately 30 months prior to release.

"Inmate Talbott is subject to notifications under Public Law 103-322, Violent Control and Law Enforcement Act of 1994, due to a current and past crimes of violence."

18.    **COMPLETED BY:**    _Carl M. Miedich_    5/8/06
                                Carl M. Miedich, Case Manager, Unit H-2B    Date

19.    **REVIEWED BY:**    _____    5/8/06
                           Pete Pottios, Unit Manager, Unit H-2    Date

Ex-20

April 16, 2002

The Honorable Judge Richard Striegel
Floyd County Superior Court
200 City County Bldg
New Albany, IN 47150

Dear Judge Striegel:

### RE: RICHARD DALE TALBOTT

Richard Dale Talbott has informed me that you will be ruling on his case on May 13, 2002.

As a matter of consideration, I wish to bring the following to your attention:
* He is quite aware of what has transpired to allow him his current penal status.
* He has no intention of returning to New Albany or its environs (permanently and/or for a visit); he is well aware of the problems associated there.
* He has a brilliant mind and wishes to use it productively as a contributing member of society.
* He fully realizes the implications of not strictly adhering to "society's" rules.
* He knows full well (now) how childish tribulations can harm the future and to what extent.
* The guards at the Penitentiary have told me numerous times (unsolicitedly) that he is a model prisoner.
* The guards have also told me (unsolicitedly) that he has no business being in prison; i.e., what he did does not warrant his current sentence in any regard.

Further, as we plan a life together permanently, our goal is for him to join me in California. I am gainfully employed at Loyola Marymount University (a Jesuit university), am active in the community, and in the church. Richard sees (through me) what can be attained through perseverance and hard work. I am in constant contact with him through visits, letters, and the telephone.

Any consideration you may be able to give releasing him from unfounded allegations will be greatly appreciated.

If you wish to contact me by telephone, please feel free to do so.

Sincerely yours,


Karen A. Bertilson
530 Avenue G, #24
Redondo Beach, CA 90277
310-543-2313

Ex-21

March 3, 2004

To Whom It May Concern:

This is to declare that Richard Dale Talbott may at any time and for any reason remove any and all funds from Washington Mutual Bank, Account #095-176477-1.

Karen A. Bertilson
530 Avenue G, #24
Redondo Beach, CA  90277-6080

Ex-22

## CRIMINAL LIFESTYLES
### ESSAY
### June 7, 2005

In 1994, I found 24 rounds of ammunition and took them to the Floyd County, Indiana, Prosecutor's Office.

This act, according to federal authorities, violated Title 18 United States Code, Section 922(g)(1), also known as the "Felon in Possession" statute.

I was indicted, tried, and convicted, by the federal government and, eventually, sentenced as an Armed Career Criminal to 264 months imprisonment.

I transported the ammunition downtown in an effort to assist my (now deceased) wife, who was being held for a crime she did not commit, and the ammunition was part of the evidence needed, I felt, which would prove her innocence.

I also felt I had no option (felon or not) in the matter, as both my character and upbringing limited those options in light of the circumstances surrounding my possession of these articles.

I made a decision to do what I felt was the right thing and do not regret that decision which, I feel, was fully justified – based not on any "Criminal Lifestyle," but common sense.

I cannot, and do not, feel any 'remorse' for committing this 'crime' nor do I feel that any 'thinking errors' were involved (if so, then the future must be a very bleak one for me , as I would do the same thing tomorrow if the same situation presented itself.

Although my conduct, to an outsider, might be characterized as one under the "Sentimentality" label, such characterization would appear to doom every member of society, as a whole, as it would

Ex-23

appear to apply to any person who ran a stop-sign in order to get his pregnant wife to a hospital, during the delivery of her baby, or his child, who happened to be having a seizure.

Indeed, with the exception of those characteristics labeled "Power Orientation," "Superoptimism," and "Cognitive Indolence," 5 of the 8 characteristics associated with a criminal lifestyle directly, or indirectly, passed through my mind at the time I committed the 'crime' which landed me in prison.

However, as criminal intent (as a matter of law) is a necessary prerequisite to any, and all, criminal activity, I do not (never have, and never will) fell that any of the 8 Criminal Lifestyle characteristics apply to my conduct in 1994.

My wife called me a "knight in shining armor" for doing what I did, **felons** call me 'stupid' and the U.S. government called me an Armed Career Criminal.

I, however, choose to call my actions "right," no matter how much time I do.

Richard Talbott
Reg.No. 04895028
Housing Unit H/1A

Ex-24

# Southern District of Indiana

UNITED STATES OF AMERICA

v.

**Richard Dale Talbott**

Date of Original Judgment:   06/09/1995
(or Date of Last Amended Judgment)

**Reason for Amendment:**

Correction of Sentence on Remand (Fed. R. Crim. P. 35(a))

Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))

Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(c))

Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36))

## THE DEFENDANT:

pleaded guilty to count(s) _____

pleaded nolo contendere to count(s) _____
which was accepted by the court.

was found guilty on count(s)   * 2
after a plea of not guilty.

## AMENDED JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

Case Number:  4:94CR00021-001

**William E. Marsh**
Defendant's Attorney

☐ Modification of Supervision Conditions (18 U.S.C. § 3583(c) or 3583(e))

☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))

☐ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))

☐ Direct Motion to District Court Pursuant to   ☐ 28 U.S.C. § 2255.
   ☐ 18 U.S.C. § 3559(c)(7)   ☐ Modification of Restitution Order

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C.   922 (g)(1) | Felon in Possession of Ammunition | 11/21/1994 | 2 |
| 18 U.S.C.   924 (c) | Felon in Possession of Ammunition | 11/21/1994 | 2 |

The defendant is sentenced as provided in pages 2 through   6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

The defendant has been found not guilty on count(s) _____

Count(s)   * 1 _____   is dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.:   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

Defendant's Date of Birth:   06/10/1964

Defendant's USM No.:   04895-028

Defendant's Residence Address:

Bureau of Prisons

320 First Street, NW

Washington   DC   20534

Defendant's Mailing Address:

Bureau of Prisons

320 First Street, NW

Washington.   DC   20534

07/03/1996
Date of Imposition of Judgment

Signature of Judicial Officer

**Honorable David F. Hamilton**

**Judge, U. S. District Court**
Name & Title of Judicial Officer

July 10, 1996
Date

Ex-25

8.    After Fuller fell to the ground, the defendant took the rifle from his wife and ejected the spent shell casing. He reloaded the rifle and aimed it at Fuller threatening him with further harm if he got up or tried to get to his car.

9.    Fuller drove himself and Mozee to the hospital. The defendant and his wife also went to the hospital. There, police arrested the defendant's wife in connection with the shooting, and seized the rifle and some ammunition from the car.

10.   On November 21, 1994, the defendant was arrested at the Floyd County Courthouse on Criminal Recklessness charges in connection with the November 19, 1994, incidents, and approximately 24 rounds of .22 caliber ammunition was seized from him at the time of his arrest.

Victim Impact

11.   There are no identifiable victims of the offenses.

Adjustment for Obstruction of Justice

12.   The probation officer has no information suggesting the defendant impeded or obstructed justice.

Adjustment for Acceptance of Responsibility

13.   The defendant has maintained his innocence since being arrested. Therefore an adjustment for acceptance of responsibility can not be given to this defendant.

Offense Level Computations

14.   The 1994 edition of the Guidelines Manual has been used in this case. Pursuant to the provisions found in U.S.S.G. § 3D1.2(a), Counts 1 and 2 are grouped as the offense level is determined largely on the basis of the total amount of harm.

15.   Base Offense Level: The United States Sentencing Commission Guideline for     24
      violation of 18 U.S.C. § 922(g)(1) and 924(e) is found in U.S.S.G §
      2K2.1(a)(2) and calls for a base offense level of 24.

16.   Specific Offense Characteristics: Section 2K2.1(b)(5) provides for a 4 level     4
      increase since the defendant used the firearm in connection with another
      felony offense, to wit: Criminal Recklessness as charged in Floyd Circuit Court
      under Cause No. 22C01-9411CF00086.

17.   Victim-Related Adjustments:  None.     0

18.   Adjustments for Role in the Offense:  None.     0

EX-26

Federal Bureau of Prisons

Number    068-93  (5820)

Date     March 15, 1993

Subject   Maintenance of Inmate
Files

# Operations
# Memorandum

1.  PURPOSE.  The purpose of this Operations Memorandum is to advise Unit Team staff members of a recent case concerning staff response to a claim by an inmate that his central file contained incorrect information.

2.  BACKGROUND.  In Sellers v. Bureau of Prisons, 959 F.2d 307 (D.C. Cir. 1992), the court held that the Bureau of Prisons must maintain accurate records of information which are capable of being verified.  The case involved an inmate who was challenging information in his file, including a presentence report reference to an alleged bank robbery. The inmate contended that the bank robbery charge had been dismissed, and that its inclusion in the presentence report had resulted in the denial of parole and adverse determinations regarding custody and security classifications, job and quarters assignments, and the opportunity to earn money and good time.  The Parole Commission had noted in the inmate's file that he disputed the information in his record; the Bureau of Prisons apparently maintained the challenged information in the record without comment, despite the fact that the probation officer had written a letter indicating that the charge had been dismissed.

The court held that if an agency willfully or intentionally fails to maintain accurate files, and those records then result in an adverse determination toward an individual, the agency will be liable for money damages.  The rule of the case is that "the agency must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual."  Sellers at 312.  The Sellers court held that an agency does not meet the requirements of the Privacy Act simply by noting that the information is disputed.  If the court were to find a willful or intentional failure to maintain accurate records, the agency could be liable for

Exhibit 2

Ex-27

money damages to the inmate. Because inmates from all over the country may file Privacy Act suits in the District of Columbia, the <u>Sellers</u> case will affect all of our institutions. A final determination has not yet been made in <u>Sellers</u> regarding whether the Bureau's actions will be considered willful or intentional and therefore result in the granting of monetary damages to the inmate. The procedures recommended below in this Operations Memorandum are intended to minimize the chances of such award resulting from future challenges.

3. <u>ACTION</u>. Unit team staff need to take reasonable steps to ensure the accuracy of challenged information in an inmate's central file, particularly when the information challenged can be verified. Initial reasonable steps include requiring specific action from the inmate, such as providing documents which support a challenge to the information in the files. The inmate can also be asked to provide the names of people to contact regarding the challenged information.

If an inmate is able to provide such information in support of a challenge, unit staff have a duty to investigate and to take steps to ensure the correction of any inaccuracies discovered. Once a determination can be made by Bureau staff that information in an inmate's central file is incorrect, that information must not be used by staff. For example, in a situation like <u>Sellers</u> where the inmate challenged the Presentence Report, unit staff should not change the report but should inform the probation officer that the report has been challenged. If the probation officer confirms that the information in the report is inaccurate, staff should insert a note to that effect in the file in order to ensure that no decisions affecting the inmate are based on the discredited information. Staff should also request an updated Presentence Report from the probation officer. These procedures will be incorporated into the Central File Program Statement at the next annual review.


Patrick R. Kane
Assistant Director
Correctional Programs
Division

Wallace H. Cheney
Assistant Director
Office of General Counsel

Ex-28

(1)  initial review of all current files of the inmate
     population;
(2)  receipt of inmate requests to review files, and the
     monitoring of the inmate review of files; and
(3)  screening of all records and documents in the future as
     they are sent to the Inmate Central File for filing.

Each institution may adopt its own procedures and forms for
submitting and acknowledging requests and for logging and
scheduling Inmate Central File reviews.

b.  <u>Inmate Request and Review</u>.  Any inmate seeking to look at
his/her Inmate Central File shall submit a request to a staff
member, as designated in the local instruction.

* The inmate's request should be acknowledged.
* The inmate should be permitted to review the file whenever
  practicable.
* All file reviews must be done under constant and direct
  staff supervision.
* Those materials which have been determined to be non-
  disclosable shall be removed from the folder before inmate
  review.
* An entry shall be made on the Inmate Activity Record
  (BP-381) to show the date the inmate reviews the file.
  The staff member monitoring the review shall initial the
  entry and the inmate shall be asked to initial it.

c.  <u>Inmate Challenge to Information</u>.  An inmate may challenge
the accuracy of the information in his or her Inmate Central
File.  Unit team staff <u>shall</u> take reasonable steps to
ensure the accuracy of challenged information, particularly when
that information is capable of being verified.  The inmate is
required to provide staff with sufficient information in support
of a challenge (names of persons to contact, government agency,
etc...)..

When an inmate provides such information, staff <u>shall</u> review
the alleged error(s) and take reasonable steps to ensure the
information is correct.

For example, if an inmate challenges information in the
Presentence Investigation Report (PSI), staff should inform the
appropriate U.S. Probation Office (USPO) in writing of the
disputed information, and request that a written response also be
provided.  **USPO procedures, however, do not allow for changes or
addendums to be made to the Presentence Investigation Report
after sentencing since it is a court document.**

Ex-29

.... USPO subsequently reports that the challenged
information, or some part thereof is not accurate, staff shall
attach the Bureau's inquiry and the USPO response to the
challenged document. Staff shall file this information in the

PS 5800.11
September 8, 1997
Page 20

applicable section of the Inmate Central file, and also make a
notation on the Inmate Activity Record form (BP-381) to ensure
that future decisions affecting the inmate are not based on the
discredited information.

When the USPO verifies that the information in the PSI is
indeed inaccurate, as claimed by the inmate, staff should
subsequently review, and where indicated, correct Bureau
generated reports or data such as the Inmate Load and Security
Designation form (BP-337), the Custody Classification form
(BP-338), Progress Report, and any other reports that may have
been based on the PSI. Bureau reports, data, or SENTRY
transactions should be corrected within a reasonable period of
time after identification as being inaccurate.

If the information source will provide a corrected document or
data, it should be immediately inserted in the file or data base
and the inaccurate information or document removed. A notation
on the Inmate Activity Record form should acknowledge the
insertion of the corrected information or document.

d.  Inmate Copies.  Any inmate who wishes to receive copies of
disclosable materials from the file shall submit a request to
institution staff. Within a reasonable time after the request,
institution staff shall provide the inmate copies of requested
disclosable documents maintained in the Inmate Central File.
Fees for the copies are to be calculated in accordance with the
Program Statement on Release of Information.

e.  Privacy Folder.  Records which have been determined, under
separately issued guidelines, to be excluded from inmate review
shall be placed in the Privacy Folder. Normally, actual
placement of documents in the Inmate Central File is the Unit
Secretary's responsibility. The Privacy Folder shall be placed
on top of section 5 in the Inmate Central File.

As materials from any source are submitted for placement in
the Inmate Central File, they are routed to an appropriate staff
member the Warden designated. The Case Manager shall review the
materials, to ascertain whether to place them in the regular
sections, the Privacy Folder, or discard them. Any document to
be excluded from inmate review must be stamped "FOI EXEMPT". At
each Program Review and before an inmate reviews his/her Inmate
Central File, the Case Manager shall review the file to ensure
the proper location of forms and purge outdated or ----