Exhibit G

**THE HONORABLE**

**SENATOR BARACK OBAMA**


Enclosed is a copy of the most recent complaint filed against my unit manager (Mr. Pickens) and Case Management Coordinator (Mr. Pete Pottios), who refuse to consider the new evidence I have submitted, which clearly shows that the **only person** charged with allegedly shooting anyone with the firearm (which I received a federal charge on) was my (now deceased) wife, Trudy Talbott.

This is only being presented in light of the fact that although the complaint was lodged August 21, 2006, the warden refuses to address the matter (as appears to be the normal practice at this institution when people of color file for redress of grievances).

I hope that I do not come across as a "race card major" for I am not.

However, I do feel very strongly that severe discrimination is running rampant at this insttituion and that a Congressional investigation should be initiated.

Respectfully,

Reg.No.  04895-028

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

---

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Talbott    Richard    D | 04895/028 | H1A | FCI/GREENVILLE |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST** The instant complaint is being lodged against my unit team & CMC Pete Pottios as a result of their failure/refusal to consider my challenge to information contained in my central file (PSI), pursuant to Program Statement 5800.11, in light of **new evidence.**

According to Program Statement 5800.11, once the challenged information is verified as being inaccurate, the Bureau of Prisons (BOP) is not to use the inaccurate information in any future decisions concerning the inmate.

According to my unit team (Mr. Pickens) and CMC Pottios, the BOP is scoring my current offense as a "greatest severity" offense because I supposedly shot someone with a firearm on November 19, 1994.

Recently, I submitted new evidence (which includes statements from the prosecuting attorney and at least **3 appellate judges**) which expressly refute their allegations.

Moreover, not only does my presentence investigation report (PSI) **NOT** allege that I shot anyone, but I have presented **new evidence** (in the form of police reports concerning November 19, 1994) which clearly reveal that the **only person** charged with shooting anyone was my (now deceased) wife, Trudy Talbott. (see attached)

| 8-21-2006 | *Richard D Talbott* |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B– RESPONSE**

| DATE | WARDEN OR REGIONAL DIRECTOR |
|---|---|

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                    CASE NUMBER: _____

---

**Part C– RECEIPT**                              CASE NUMBER: _____
Return to: _____

BP-9 COMPLAINT
CONTINUED

Both the records office (which actually contacted the sentencing court, in July, 2006) and former CMC Robinson agree with me and the records office verified that the firearm charge was dismissed (and an Amended Judgement entered) in July, 2006, concerning me.

To the extent CMC Pottios claims he has previously considered my challenge (thus, my new evidence), such a claim is untrue, misleading and very unprofessional in my opinion, as verification of my new evidence has **never** been sought by him.

To the extent CMC Pottios continues to rely on an allegation in my PSI (that even he cannot prove exists), instead of the findings of an appellate court and admission by a U.S. Attorney that I am **not in prison for shooting anyone**, such conduct is negligent and smacks of discrimination.

Finally, as my PSI (paragraph 11) expressly states that their "are no identifiable victims of the offenses" CMC Pottios claim that he is relying on said report appears to be proof or arbitrary and capricious behavior when classifying inmates such as myself.

In light of the **new evidence and verification by the records office** (also Ms. Robinson), I request that CMC Pottios and H1A Unit Manager Pickens be ordered to reduce my "current offense" severity score to that of "moderate severity" and that my central file records be corrected after reviewing the **new evidence** presented (which is attached).

Thank you

BP-A148.055
SEP 98

**INMATE REQUEST TO STAFF** CDFRM

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) H1A UNIT MGR/ Mr ~~Gibson~~ *PICKENS* | DATE: August 16 2006 |
|---|---|
| FROM: Richard Talbott | REGISTER NO.: 04895 028 |
| WORK ASSIGNMENT: Psychology | UNIT: H1A |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

_____ I have **new evidence** which reveals that my crime is not a

crime of violence and that I am not currently imprisoned

for conduct which involved me shooting anyone

_____ I ask that my offense severity rating/score be corrected ~~@ @~~

See attached

(Do not write below this line)

DISPOSITION:

*This was answered by your previous Unit Manager.*

Signature Staff Member                          Date  8/17/06

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER          **SECTION 6**

Administrative Remedy
Request
(Cont.)

In light of newly received documents (such as police reports and transcript pages relating to my federal trial) I seek through the instant request (BP-8) to challenge information in my central file which is currently being interpreted by my unit team ( For HOUSING UNIT H1A), as a crime of violence and involving me shooting someone.

## RELEVANT FACTS

1. In 1994, I was indicted by a federal grand jury and charged with two counts of violating title 18 USCS 922(g)(1), also known as the 'felon in possession' statute;

2. Count one alleged that on November 19, 1994, I possessed a firearm and count two alleged that on November 21, 1994, I possessed 24 rounds of ammunition;

Exs. 1-2

3. None of the charges alleged that a victim was involved in the offenses, or that I had shot anyone;

4. I was convicted of both counts, afterwhich, a presentence Report (PSI) was ordered prepared for sentencing purposes;

5. On June 9, 1995, I was sentenced on counts one and two — the judgement concerning this sentence was entered on June 14, 1995;

Ex. 3

6. I appealed the convictions and sentences to the United States Court of Appeals for the Seventh Circuit;

7. The appellate court vacated/reversed the firearm conviction as having been illegally obtained, also vacated the sentence after finding the district court had enhanced my sentence for conduct I was neither charged with, nor convicted of, in federal court (namely, shooting someone);        Exs. 4-11

8. The case was remanded back to the district court, however, rather than retrie me (as ordered by the higher court), on July 3, 1996, the district court ordered the firearm charge (count 1) dismissed;

Ex. 12

9. An "Amended Judgement" was entered on July 10, 1996;

Ex. 13

10. This Amended Judgement reflects that the only offense conduct for which I am currently imprisoned consist of possessing ammunition as a convicted felon on November 21, 1994;

11. The offense conduct concerning this charge is contained in paragraph 10 of my PSI, and a look at paragraph 11 reveals that "there are no identifiable victims of the offense."

Ex. 14

12. Notwithstanding the above stated facts, my unit team continues to classify my current offense as a crime of violence and one in which I supposedly shot someone with a firearm, which makes my instant offense score that of Greatest Severity;

Ex. 15

13. Based on the above styled facts and the following new evidence, I am challenging both the "crime of violence" and "Greatest Severity" classification by my unit team concerning my current offense of being a felon in possession of ammunition on November 21, 1994, for instance;

14. I have newly received evidence in the form of police reports concerning the incident of November 19, 1994, which reveal that the only person charged with/accused of shooting anyone on that date was my (now deceased) wife Trudy Talbott · although it was with the same firearm I was eventually charged with possessing as a felon;

Exs. 16-19

15. In its opening statement to the jury presiding over my federal trial, the government specifically informed them "to keep in mind the defendant (me) is not charged with being involved in the shooting of November 19, 1994...he is not charged with the shooting you may hear about that took place on November 19, 1994;

Exs. 20-21

16. In its opening statement, the government specifically informed the jury of the facts which lead to count two in the indictment (the ammunition count) and that the charge occurred on November 21, 1994;

17. These statements by the government tracked the language of the statute and the indictment and contained no accusation that I had shot anyone;

Exs. 22-23

18. The jury instructions given by the district court tracked only the language of the statute and the indictment, concerning count 2;
Exs. 24-25

19. In its closing arguments to the jury, the government (once again) asked the jury to convict me only on the conduct contained in counts one and two of the indictment (none of which alleged I shot anyone);
Ex. 26

20. At sentencing, my attorney sought to have my sentence reduced, concerning the ammunition count, based on the fact I never denied the conduct making up the offense and specifically admitted the offense conduct making up the charge, throughout the case;
Ex. 27

21. On appeal, the Seventh Circuit Court of Appeals specifically ruled that my offense(s) are not crimes of violence. See Exs. 9-11

22. The PSI reveals there are no identifiable victims of the offense. See Ex. 14

23. The firearm charge being used to score my instant offense as Greatest Severity was dismissed July 3, 1996. See Ex. 12

24. The only offense conduct I am currently imprisoned for consist of that found in count 2 of the indictment, paragraph 11 of the PSI and contained in the "Amended Judgement." See Exs. 2, 13 & 14

25. Pursuant to Sellers v. Bureau of Prisons, supra (959 F.2d 307 (D.C. Cir. 1992), I am challenging all information contained in my central file and that being relied on by the Bureau of Prisons to the effect that I am currently serving a term of imprisonment for conduct which involved me shooting someone and/or a crime of violence;
Ex. 28-29

26. The relief sought is that verification be sought from the US District Court for the Southern District of Indiana (at Indianapolis) that my current offense does not include me shooting anyone concerning count 2.

I also ask that my records be corrected pursuant to program statement 5800.11 to reflect the fact that my instant offense is a moderate severity offense;

3

27. Finally, I request that my records be corrected and that the challenged information not be used to make any future decisions adverse to myself, as prohibited by program statement 5800.11 once the challenged information is verified as being inaccurate;

Exs. 30 <s>#2</s> 31

**ALTERNATIVELY**

In the alternative. I request that the conduct being relied on by the Bureau of Prisons (that I am currently imprisoned for conduct which involved me shooting someone on November 19, 1994) be verified by either the US District Court or US Probation Office for the Southern District of Indiana, as accurate information.

8-16-2006

Thank you

04895/028
HIA

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

INDIANAPOLIS DIVISION
DEC 13 PM 4:14

SOUTHERN DISTRICT
OF INDIANA
A. VICTORIA TREVELYOW
CLERK

UNITED STATES OF AMERICA,            )
                                     )
              Plaintiff,             )
                                     )
v.                                   )    CAUSE NO. NA 94-     -CR
                                     )
RICHARD DALE TALBOTT,                )
                                     )
              Defendant.             )

## I N D I C T M E N T

### Count 1

The Grand Jury charges that:

On or about November 19, 1994, at New Albany, Floyd County, Indiana, in the Southern District of Indiana, the Defendant herein,

### RICHARD DALE TALBOTT

having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, that is, on June 10, 1991, RICHARD DALE TALBOTT, was convicted of Battery in the Circuit Court, Clark County, Indiana, in Cause Number 10C01-9103-CF046, did knowingly possess and receive a firearm, that is, a Glenfield, model 25, .22 caliber, bolt action rifle, serial number 72439593, which firearm had been shipped or transported in interstate commerce.

In violation of Title 18, United States Code, Sections 922(g)(1) and 924(e).

Ex. 1

## Count 2

The Grand Jury further charges that:

On or about November 21, 1994, at New Albany, Floyd County, Indiana, in the Southern District of Indiana, the Defendant herein,

### RICHARD DALE TALBOTT

having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, that is, on June 10, 1991, RICHARD DALE TALBOTT, was convicted of Battery in the Circuit Court, Clark County, Indiana, in Cause number 10C01-9103-CF046, did knowingly possess and receive ammunition, that is, approximately 24 rounds of Winchester Super X, .22 caliber LR ammunition, which ammunition had been shipped or transported in interstate commerce.

In violation of Title 18, United States Code, Sections 922(g)(1) and 924(e).

A TRUE BILL:

_____
FOREPERSON

_____
Judith A. Stewart
United States Attorney

_____
Mark D. Stuaan
Assistant United States Attorney

2

Ex.

AO 245F (7/93) Modified (11/94) Sheet 1 - Judgment in a Criminal Case

# United States District Court

## SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA
V.

JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After 11/1/87)

Richard Dale Talbott
(Name of Defendant)

Case Number:  NA 94-21-CR-01

Linda M. Wagoner
Defendant's Attorney

THE DEFENDANT:

[ ]  pleaded guilty to count(s) _____
[ ]  pleaded nolo contendere to count(s) _____ which
     was/were accepted by the Court.
[x]  was found guilty on count(s)  1 and 2
     after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18:922(g)(1) and 924(e) | Felon in Possession of a Firearm | 11/19/94 | 1 |
| 18:922(g)(1) and 924(e) | Felon in Possession of Ammunition | 11/21/94 | 2 |

The defendant is sentenced as provided in pages 2 through  6  of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ]  The defendant has been found not guilty on count(s) _____.
[ ]  Count(s) _____ (is)(are) dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid.

Defendant's Soc. Sec. No.:  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

Defendant's Date of Birth:  06-10-64

Defendant's USM No.:  04895-028

Defendant's mailing address:

Marion County Jail
40 S. Alabama Street
Indianapolis, IN  46204

Defendant's residence address:

Same as above

June 9, 1995
Date of Imposition of Judgment

Signature of Judicial Officer

Honorable David F. Hamilton
U. S. District Court Judge
Name and Title of Judicial Officer

JUN 1 4 1995
Date

A - 2

UNITED STATES of America, Plaintiff-Appellee,
v.
**Richard Dale TALBOTT, Defendant-Appellant.**
No. 95-2503.
United States Court of Appeals,
Seventh Circuit.
Argued Jan. 17, 1996.
Decided March 8, 1996.

Appeal from the United States District Court for the Southern District of
Indiana, Indianapolis Division. No. NA 94-21-CR-H/H--David F. Hamilton, Judg

Before BAUER, EASTERBROOK, and MANION, Circuit Judges.

PER CURIAM.

*1 A jury convicted Richard Dale Talbott of being a felon in possession of
a firearm and of being a felon in possession of ammunition. 18 U.S.C. s
922(g)(1). The district court sentenced Talbott to 327 months' imprisonment,
to be followed by five years of supervised release. He appeals his convictid
and sentence. We have jurisdiction under 28 U.S.C. s 1291.

I

In the evening of November 19, 1984, Lori Klingsmith and Milton Ferrell drev
to the Bridge Liquors store in New Albany, Indiana. Ferrell entered the stor
while Klingsmith waited in the car with her grandson. At about the same time
the defendant and his wife, Trudy Talbott, entered the store. While there, 
they encountered the defendant's cousin, Clarence Fuller.

Ferrell purchased a case of beer. He left the beer at the check-out counter
while he went to pick out a bottle of bourbon. Fuller took the case of beer
out of the store and placed it in the Talbotts' car. When Ferrell realized
that his beer no longer was at the check-out counter, he exited the store and
confronted the defendant. An argument ensued, during which Ferrell removed a
knife from his pocket. Upon seeing the knife, Trudy Talbott handed the
defendant a rifle from inside their car. The defendant pointed the rifle at
Ferrell, who reentered the store and telephoned the police. The defendant
thereupon returned the rifle to his wife.

At this point, Fuller approached the Talbotts' car to retrieve the case of
beer. A struggle over the rifle developed among the defendant, Fuller, and
Trudy Talbott. During the struggle, Fuller was shot in the neck and fell to
the ground. The defendant took the rifle from his wife, ejected the spent
casing, stood over Fuller, and threatened to kill him if he got up.

Fuller drove himself to the hospital for treatment of his gunshot wound. T
defendant and his wife also went to the hospital, where the police arrested
Trudy Talbott for attempted murder. The police recovered the loaded rifle a
some ammunition from the Talbotts' car. The defendant told the police that
owned the rifle.

The following Monday, November 21, 1994, the defendant went to the Floyd
County Courthouse, where his wife was being charged. Shortly after he arriv
there, a detective arrested him for his involvement in the November 19
altercation. Following the arrest, the detective searched the defendant and

Copr. (C) West 1996 No claim to orig. U.S. govt. wo

found 24 rounds of ammunition in his pocket. Because Talbott had been convicted of felony battery in 1991, the federal government charged the defendant with two counts of being a felon in possession (of a weapon and of ammunition), in violation of 18 U.S.C. s 922(g)(1).

## II

At trial, the theory of defense was that the defendant justifiably possessed the rifle in order to prevent harm to himself and to his wife, and that he justifiably possessed the ammunition because he carried it to the courthouse t surrender it as evidence. The defendant tendered a self-defense instruction and what he termed a "good faith defense" instruction. The tendered instructions stated that the government had the burden to negate the defenses beyond a reasonable doubt. The district court determined that the defendant had raised both defenses sufficiently [FN1] and that instructions therefore were appropriate on each. In instructing the jury, however, the court stated that the defendant bore the burden of proving the defenses by a preponderance of the evidence. The defendant argues on appeal that the instructions, by shifting the burden of proof to him, amounted to reversible error. In reviewing jury instructions to which objections properly were raised in the proceedings below, we must determine, from looking at the charge as a whole, "whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." United States v. Donovan, 24 F.3d 908, 916-17 (7th Cir.) (citation omitted), cert. denied, 115 S.Ct. 269 (1994). We conclude that the challenged instructions misled the jury by impermissibly shifting the burden of proof to Talbott.

*2 The United States Constitution requires the government to prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] is charged." In re Winship, 397 U.S. 358, 364 (1970); Mason v. Gramley, 9 F.3d 1345, 1349 (7th Cir.1993). A jury instruction that shifts to the defendant the burden of disproving an element of the charged offense i: 1constitutional. United States v. Toney, 27 F.3d 1245, 1250 (7th .ir 1994) citing Patterson v. New York, 432 U.S. 197, 215 (1977). However, federal and state legislatures may reallocate the burden of proof by labeling elements as affirmative defenses and stating that criminal defendants bear th burden of proving those defenses. Martin v. Ohio, 480 U.S. 228, 233 (1987); Patterson, 432 U.S. at 210; Eaglin v. Welborn, 57 F.3d 496, 500-01 (7th Cir.1995) (en banc); Mason, 9 F.3d at 1350. The Supreme Court has upheld this shifting of the burden of proof against constitutional challenges, reasoning that the federal Constitution requires that the government bear the burden only as to the elements of the charged crime and that the legislature's definition of the elements of a criminal offense usual is dispositive. Martin, 480 U.S. at 232-33; McMillan v. Pennsylvania, 477 U.S. 79, 85 (1986); Patterson, 432 U.S. at 201-02.

Using this power, Congress has shifted the burden of proving the affirmative defense of insanity. See 18 U.S.C. s 17(b) ("[t]he defendant has the burden of proving the defense of insanity by clear and convincing evidence"). Similarly, 18 U.S.C. s 2320(c) states that "[i]n a prosecution [for trafficking in counterfeit goods or services], the defendant shall have the burden of proof, by a preponderance of the evidence, of any [applicable] affirmative defense." See also 18 U.S.C. s 373(b) (defines "voluntary and complete" renunciation defense to charge of solicitation to commit a crime of

Copr. (C) West 1996 No claim to orig. U.S. govt. wor

reponderance of the evidence). Compare 18 U.S.C. s 3146(c) (defines
ffirmative defense to charge of failing to appear, but does not allocate to
efendant burden of proving defense).

Nevertheless, the fact that the Constitution allows Congress or state
egislatures to enact laws allocating to criminal defendants the burden of
roving affirmative defenses does not mean that, absent a statute actually
oing so, the burden shifts automatically. In other words, though it may be
onstitutionally permissible to enact a burden-shifting statute, some
ffirmative legislative action must trigger that shift. See Mason, 9 F.3d
t 1350 (noting that Supreme Court has approved state statutory schemes that
do not require the State to disprove every affirmative defense but that
nstead allocate to a defendant the burden of establishing his affirmative
efense by a preponderance of the evidence"). Absent such a statute, the
urden of proof remains on the government to negate beyond a reasonable doubt
he affirmative defense properly raised by the defendant. See, e.g.,
acobson v. United States, 503 U.S. 540, 549 (1992) (entrapment defense);
ullaney v. Wilbur, 421 U.S. 684, 701, 704 (1975) (heat of passion
efense); United States v. Read, 658 F.2d 1225, 1236 (7th
ir.1981) (withdrawal from conspiracy defense); United States v. Jackson,
69 F.2d 1003, 1008 n. 12 (7th Cir.), cert. denied, 437 U.S. 907
1978) (self-defense). Thus, although a defendant may bear the burden of
roduction as to an affirmative defense (that is, he must produce sufficient
vidence to require its submission to the jury), see Toney, 27 F.3d at 1248,
he burden of proof (or the burden of persuasion) remains on the government to
egate that defense beyond a reasonable doubt, unless a statute affirmatively
eallocates that burden of proof to the defendant.

*3 We have not found, nor has counsel presented, any statutory predicate
for the affirmative defenses raised in this case. "Self-defense" is not
fined in the federal criminal code as a defense to the crime charged, that
s, the crime of being a felon in possession. Instead, some circuits have
recognized it as a matter of common law. [FN2] See United States v. Elder,
16 F.3d 733, 738-39 (7th Cir.1994); see also United States v. Singleton,
902 F.2d 471, 472 (6th Cir.), cert. denied, 498 U.S. 872 (1990); United
States v. Lemon, 824 F.2d 763, 765 (9th Cir.1987); United States v. Panter,
588 F.2d 268, 271 (5th Cir.1982). Just as Congress has not defined the
defenses by statute, neither has it enacted any statute allocating to the
defendant the burden of proving the defenses asserted here. Because no law
reallocated the burden of proof to Talbott, the prosecution had the burden not
only of proving beyond a reasonable doubt the elements of the charged offenses
but also of negating beyond a reasonable doubt the affirmative defenses raised
by him. See Jackson, 569 F.2d at 1008 n.12. The district court incorrectly
instructed the jury by telling them that Talbott bore the burden of proof on
these defenses. Although the legislature may enact statutes shifting the
burden of proof to the defendant on affirmative defenses, the district court
does not have that authority. See United States v. Gaudin, 115 S.Ct. 2310,
2321 (1995) (Rehnquist, C.J., concurring) (federal and state legislatures may
reallocate burdens of proof).

This circuit's pattern jury instructions support our conclusion. The pattern
instructions on the insanity defense reflect that Congress by statute shifted

he burden of establishing defenses. See 1 Edward J. Devitt et al
riminal Jury Instructions of the Seventh Circuit, Vol. III, Instructions
.02 & 6.01a (1986). [FN3] In contrast, Pattern Instruction 6.01, which
pplies in cases involving affirmative defenses not defined by statute (or
here the statute describing the defense does not affirmatively shift the
urden of proof to the defendant), provides that the government must negate any
ssues raised by an affirmative defense beyond a reasonable doubt:

To sustain the charge of _____ the government must prove the following
ropositions:

First:

Second:

Third:

Fourth: (Negating any issues raised by an affirmative defense, e.g., self-
lefense.)

If you find from your consideration of all the evidence that each of these
ropositions has been proved beyond a reasonable doubt, then you should find
he defendant guilty.

If, on the other hand, you find from your consideration of all of the
evidence that any of these propositions has not been proved beyond a reasonabl
loubt, then you should find the defendant not guilty.

Similarly, the federal pattern instruction (issued by the Federal Judicial
Center) on the defense of duress, which seems to us a close analogue to the
affirmative defense raised in this case, states that "on this issue, just as c
all others, the burden is on the government to prove the defendant's guilt
beyond a reasonable doubt." Pattern Criminal Jury Instructions, Instruction
55 (1987).

*4 The prosecutor relies on our decision in Toney, asserting that the jury
instructions properly placed on Talbott the burden of proving the affirmative
defenses he raised. Yet Toney does not resolve this issue. First, Toney
nvolved an instruction significantly different from the one at issue here.
he Toney instruction stated that the government had the burden of proving
beyond a reasonable doubt the absence of coercion. 27 F.3d at 1248. Here,
by contrast, the instruction allocated to the defendant the burden of proving
his defenses by a preponderance of the evidence. Second, the authority cited
in Toney for the proposition that a defendant bears the burden of proving an
affirmative defense addresses the reallocation of the burden by statutory
enactment. Id. at 1251. For example, as we noted above, Congress by
statute has shifted the burden of proving an insanity defense to criminal
defendants asserting that defense. See 18 U.S.C. s 17(b). Similarly, both
Martin and Patterson involved challenges to state statutes shifting to crimina
defendants the burden of proving the affirmative defenses of self-defense and
extreme emotional distress. Finally, nowhere in Toney did we suggest that,
absent such a statute, the defendant must prove an affirmative defense by a
preponderance of the evidence. Toney, therefore, does not save the governmen
in this case.

### III

The question remains whether the error requires a new trial. With respect to
the conviction for carrying ammunition, it does not, and for a fundamental
reason: Talbott was not entitled to a self-defense instruction (he was not
under attack on the way to the courthouse), and there is no general defense o

Copr. (C) West 1996 No claim to orig. U.S. govt. wor

good faith. Case 1:06-cv-01684-SKM-DML document 10-8 the filed 01/11/2006 of Pages 17 Defense, which either this court nor any other court of appeals has recognized. Talbott ould have told the prosecutor about the bullets; he did not have to carry hem; and if a defendant can achieve his objective without violating the law, the defenses will fail." United States v. Bailey, 444 U.S. 394, 410 1980). Bailey deals with the defense of necessity, but the principle that veryone must comply with the law, if that can be accomplished without great cost to another vital interest, is general. So we held in Elder, 16 F.3d at 38, when rejecting an argument that a felon's possession of a shotgun for the purpose of turning it over to the police is not culpable. Elder observed that a defendant seeking to excuse such an act must show that "there are no reasonable legal alternatives to violating the law." Ibid. Elder himself argued necessity and self-defense, but nomenclature is unimportant. Apart fro its relation to mens rea, therefore, "good faith" does not excuse noncompliance with a criminal statute. Talbott does not contend that the mens rea instruction in this case was defective. Even with the misstated burden, therefore, the instruction concerning "good faith" possession of the bullets was unduly favorable to defendant. It offered him more chance for acquittal than he was entitled to.

 *5 With respect to possession of the rifle, however, the law of this circuit supported a self-defense instruction. Talbott testified that he "hear the click of a knife. [Ferrell] backed me all the way around to the passenger side of the car. And I stopped at the passenger side and he was cussing and threatening to cut me open." Only at that point, Talbott testified, did he receive the rifle from his wife. A jury might reject this testimony, or conclude that Talbott retained the weapon after the danger had passed, or infe from his statement that he owned the rifle that he possessed it at other times but these are the sort of questions the judge cannot preempt. The instruction placing the burden on defendant was therefore potentially dispositive.

 The government finally contends that, even if the court did err, the error wa harmless in light of the overwhelming evidence of Talbott's guilt. Sullivan v. Louisiana, 113 S.Ct. 2078, 2082-83 (1993), holds that an erroneous definition of "reasonable doubt" cannot be harmless error, because when the judge misstates the fundamental reasonable-doubt burden for elements of the offense, an appellate court cannot be confident that the jury decided anything at all under the correct standard. The judge must send all elements to the jury, even if the evidence is overwhelming; summary judgment cannot be grante in criminal cases. This approach does not imply that an incorrect allocation of the burden of persuasion cannot be deemed harmless. Several cases hold tha it can be. See Rose v. Clark, 478 U.S. 570 (1986); Sandstrom v. Montana, 442 U.S. 510 (1979). Sullivan requires us to distinguish an error o the fundamental reasonable-doubt standard from errors on subordinate issues; the error here is in the latter category. And this is a statutory rather tha a constitutional error, for there is no constitutional objection to giving Talbott the burden on his "defenses"--and it is entirely appropriate to let t judge serve as gatekeeper for affirmative defenses (for when there is no material dispute the judge may decline the defendant's request for an instruction). Thus the standard of harmlessness is the one in Fed.R.Crim.P. 52(a) rather than the strict standard of Chapman v. California, 386 U.S. 18 (1967).

                    Copr. (C) West 1996 No claim to orig. U.S. govt. wor



h "[a]ny error, defect, irregularity or variance which does not affect
ial rights shall be disregarded", Fed.R.Crim.P. 52(a), the defendant
 when the effect of the error is a close question. O'Neal v.
, 115 S.Ct. 992 (1995). If the jury believed Talbott's testimony about
s conduct and statements, it could have believed that Talbott possessed
e in self-defense for at least some of the time; and, if that is so,
cation of the burden of persuasion could have assumed foremost
ce in answering questions such as whether Talbott surrendered
ion as soon as the exigency had passed. Talbott is therefore entitled
 trial on the rifle charge.

## IV

endant's remaining contentions concerning the finding of guilt are
asive and do not require separate discussion. But an error by the
 judge leads us to remand for resentencing, even on the ammunition

 has a long criminal record, and the government asked the judge to
 him as an armed career criminal under 18 U.S.C. s 924(e). He
as the statutory requirements. The Sentencing Guidelines prescribe two
 offense levels in U.S.S.G. s 4B1.4(b)(3):

4, if the defendant used or possessed the firearm or ammunition in
      with a crime of violence or controlled substance offense, as defined
   .2(1), or if the firearm possessed by the defendant was of a type
   d in 26 U.S.C. s 5845(a); or

3, otherwise.

ifference between level 33 and level 34 is substantial for someone like
 with a Criminal History Category of VI. The range for level 34 is 262-
hs, while the range for level 33 is 235-293 months. Talbott's sentence
 the highest point in the range for level 34, so if his proper
fication is level 33 he is entitled to a reduction of 34 months (unless
strict judge can justify an upward departure).

dant starts with s 4B1.4(b)(3)(A), which refers to "a crime of violence
rolled substance offense, as defined in s 4B1.2(1)". A quick trip to s
reveals that being a felon in possession of guns or ammunition is not a
 of violence". According to the prosecutor, however, a court should
r all conduct related to the unlawful possession. Talbott pointed the
at Fuller and threatened to kill him; more, the rifle actually
rged and wounded Fuller (although Trudy Talbott and Fuller himself had
le in that injury). Defendant was charged by Indiana with criminal
ssness, a Class D felony, for his part in these events. And that crime,
vernment concludes, is a "crime of violence" within the scope of s
1), making level 34 appropriate under s 4B1.4(b)(3)(A). The state charge
smissed, but the federal judge found by a preponderance of the evidence
efendant threatened both Ferrell and Fuller with the rifle. That conduct
"crime of violence" under s 4B1.2(1)(ii), the judge concluded, because
esent[ed] a serious potential risk of physical injury to another."
the district judge, we conclude that defendant's display of the gun, and
scharge (for which defendant may or may not have been responsible; the
did not say), do not qualify as crimes of violence under s 4B1.2 (1)(i),
covers offenses that have "as an element the use, attempted use, or
ened use of physical force against the person of another". Neither

Copr. (C) West 1996 No claim to orig. U.S. govt. works

...on of a gu... ...reckless
...ment under Indiana law has such an element of the offense. Subsection
...broader, encompassing acts that create substantial risks of injury. No
...doubt that pointing rifles, tussling with them, and discharging them in
...uarters creates risks, as Fuller's injury shows. See generally
...States v. Rutherford, 54 F.3d 370 (7th Cir.1995). What the
...tor glosses over is this commentary in Application Note 2 (italics

...rime of violence" includes murder, manslaughter, kidnapping,
...ted assault, forcible sex offenses, robbery, arson, extortion,
...onate extension of credit, and burglary of a dwelling. Other offenses
...luded where (A) that offense has as an element the use, attempted use,
...atened use of physical force against the person of another, or (B) the
...set forth (i.e., expressly charged) in the count of which the defendant
...victed involved use of explosives ... or, by its nature, presented a
...potential risk of physical injury to another. Under this section, the
...of which the defendant was convicted is the focus of the inquiry.
...ly counts of which Talbott was convicted dealt with possession of the
...nd ammunition. To extirpate ambiguity, Application Note 2 continues:
...erm 'crime of violence' does not include the offense of unlawful
...sion of a firearm by a felon." Unless we disregard the language of
...ation Note 2 limiting the inquiry to the crime of which the defendant was
...ted, Talbott must be sentenced at level 33 rather than level 34. The
...rt judge recognized that he was going against the commentary, which he
..."some muddying of the legal water". Commentary to the Sentencing
...ines is more than mud, to be filtered out. It is legally authoritative
...it conflicts with the text of the guideline. Stinson v. United
...113 S.Ct. 1913 (1993). We held in United States v. Lee, 22 F.3d
...39-40 (7th Cir.1994), that in light of Stinson courts must respect the
...of-conviction limitation in Application Note 2. The text of the guideline
...ot resolve the question whether a judge may look beyond the crime of
...tion; the commentary settles that issue, demonstrating yet again that
...idelines are a charge-offense rather than a real-offense sentencing
..., a vital distinction that district judges must bear in mind.
...e threats to Ferrell and Fuller and the discharge of the rifle had been
...ssly charged" in the federal indictment, they could have been considered
...Application Note 2. But they were not mentioned in the indictment--and it
...d to see how they could have been, because they were irrelevant to the
...l crime. The state charged Talbott with these acts, but the state's
...s were not "the conduct of which the defendant was convicted". Defendant
...e resentenced at level 33.
...onviction for possessing ammunition is affirmed, and the conviction for
...sing the rifle is reversed. The sentence is vacated, and the case is
...ted for further proceedings consistent with this opinion.

---

...N1. Although the court did not explain what legal basis there was for a
...eneric defense of "good faith." We return to that subject in Part III of
...is opinion.

...N2. In this context, the defense has been described as duress, coercion,

Copr. (C) West 1996 No claim to orig. U.S. govt. works



essity, or ... do not affect our analysis. See United States v. Nolan, 700
F.2d 479, 484 n. 1 (9th Cir.), cert. denied, 462 U.S. 1123 (1983).

3. Instruction 4.02 provides:

[It] is a defense to the crime charged that, at the time of the commission of
[the] acts constituting the offense, the defendant, as a result of a severe
[men]tal disease or defect, was unable to appreciate the nature and quality
[of] the wrongfulness of his acts. This defense shall be referred to in
[the]se instructions as the defense of insanity.

[The] defendant has the burden of proving the defense of insanity by clear
[and] convincing evidence. Instruction 6.01a provides in relevant part:

... you find from your consideration of all of the evidence that each of
[the]se propositions [elements of the charged offense] has been proved beyond
[a r]easonable doubt, then you should find the defendant guilty, unless you
[al]so find that the defendant has proved the defense of insanity by clear
[and] convincing evidence, in which event you should find the defendant not
[gui]lty only by reason of insanity.

DOCUMENT

Copr. (C) West 1996 No claim to orig. U.S. govt. works



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | CAUSE NO. NA 94-21-CR H/H |
| RICHARD D. TALBOTT, | ) ) | |
| Defendant. | ) ) ) | |

## O R D E R

This cause comes before the Court on the Motion of the Government to dismiss Count One of the Indictment, in the following words and figures, to-wit:

[ H. I. ]

IT IS ORDERED, that Count One of the Indictment is dismissed.

Date: ___7-3-96___

DAVID F. HAMILTON

DAVID F. HAMILTON, Judge
United States District Court
Southern District of Indiana

Ex-12

# United States District Court
## Southern District of Indiana

| | |
|---|---|
| UNITED STATES OF AMERICA | **AMENDED JUDGMENT IN A CRIMINAL CASE** |
| v | (For Offenses Committed On or After November 1, 1987) |
| **Richard Dale Talbott** | Case Number: 4:94CR00021-001 |

**Date of Original Judgment:** 06/09/1995
(or Date of Last Amended Judgment)

**Reason for Amendment:**

Correction of Sentence on Remand (Fed. R. Crim. P. 35(a))

Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))

Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(c))

Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36))

William E. Marsh
Defendant's Attorney

☐ Modification of Supervision Conditions (18 U.S.C. § 3563(c) or 3583(e))

☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))

☐ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))

☐ Direct Motion to District Court Pursuant to ☐ 28 U.S.C. § 2255.
    ☐ 18 U.S.C. § 3559(c)(7) or ☐ Modification of Restitution Order

## THE DEFENDANT:

pleaded guilty to count(s) _____

pleaded nolo contendere to count(s) _____
which was accepted by the court.

was found guilty on count(s)  * 2
after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C.   922 (g)(1) | Felon in Possession of Ammunition | 11/21/1994 | 2 |
| 18 U.S.C.   924 (e) | Felon in Possession of Ammunition | 11/21/1994 | 2 |

The defendant is sentenced as provided in pages 2 through __6__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

The defendant has been found not guilty on count(s) _____

Count(s)  * 1 _____  is dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by th judgment are fully paid.

| | |
|---|---|
| Defendant's Soc. Sec. No.: 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 | 07/03/1996 |
| Defendant's Date of Birth: 06/10/1964 | Date of Imposition of Judgment |
| Defendant's USM No.: 04895-028 | |
| Defendant's Residence Address: | |
| Bureau of Prisons | Signature of Judicial Officer |
| 320 First Street, NW | |
| Washington                DC    20534 | **Honorable David F. Hamilton** |
| | **Judge, U. S. District Court** |
| | Name & Title of Judicial Officer |
| Defendant's Mailing Address: | |
| Bureau of Prisons | July 10, 1996 |
| 320 First Street, NW | Date |
| Washington                DC    20534 | |

Ex. 13

8.    After Fuller fell to the ground, the defendant took the rifle from his wife and ejected the spent shell casing. He reloaded the rifle and aimed it at Fuller threatening him with further harm if he got up or tried to get to his car.

9.    Fuller drove himself and Mozee to the hospital. The defendant and his wife also went to the hospital. There, police arrested the defendant's wife in connection with the shooting, and seized the rifle and some ammunition from the car.

10.   On November 21, 1994, the defendant was arrested at the Floyd County Courthouse on Criminal Recklessness charges in connection with the November 19, 1994, incidents, and approximately 24 rounds of .22 caliber ammunition was seized from him at the time of his arrest.

## Victim Impact

11.   There are no identifiable victims of the offenses.

## Adjustment for Obstruction of Justice

12.   The probation officer has no information suggesting the defendant impeded or obstructed justice.

## Adjustment for Acceptance of Responsibility

13.   The defendant has maintained his innocence since being arrested. Therefore an adjustment for acceptance of responsibility can not be given to this defendant.

## Offense Level Computations

14.   The 1994 edition of the Guidelines Manual has been used in this case. Pursuant to the provisions found in U.S.S.G. § 3D1.2(a), Counts 1 and 2 are grouped as the offense level is determined largely on the basis of the total amount of harm.

15.   **Base Offense Level:** The United States Sentencing Commission Guideline for violation of 18 U.S.C. § 922(g)(1) and 924(e) is found in U.S.S.G § 2K2.1(a)(2) and calls for a base offense level of 24.          24

16.   **Specific Offense Characteristics:** Section 2K2.1(b)(5) provides for a 4 level increase since the defendant used the firearm in connection with another felony offense, to wit: Criminal Recklessness as charged in Floyd Circuit Court under Cause No. 22C01-9411CF00086.          4

17.   **Victim-Related Adjustments:** None.          0

18.   **Adjustments for Role in the Offense:** None.          0

Ex-14

### (A) IDENTIFYING DATA

G NO..: 04895-028         FORM DATE: 08-25-2005       ORG: GRE

ME....: TALBOTT, RICHARD DALE               CR HX PT: 18

                       MGTV: NONE

JB SFTY: GRT SVRTY            MVED:

### (B) BASE SCORING

TAINER: (0) NONE        SEVERITY.......: (7) GREATEST

DS REL.: 102            PRIOR..........: (3) SERIOUS

SCAPES.: (0) NONE        VIOLENCE.......: (4) 10-15 YRS SERIOUS

RECOMMT: (0) N/A

### (C) CUSTODY SCORING

IME SERVED.....: (4) 26-75%     DRUG/ALC ABUSE.: (3) > 5 YRS

ENTAL STABILITY: (4) FAVORABLE    TYPE DISCIP RPT: (5) NONE

REQ DISCIP RPT.: (3) NONE       RESPONSIBILITY.: (4) GOOD

AMILY/COMMUN...: (4) GOOD

### --- LEVEL AND CUSTODY SUMMARY ---

| ASE CUST | VARIANCE | SEC TOTAL | SCORED LEV | MGMT SEC LEVEL | CUSTODY | CONSIDER |
|---|---|---|---|---|---|---|
| 14 +27 | -1 | +13 | MEDIUM | N/A | IN | DECREASE |

0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRE

/5

| 22) Police Agency | | | | 23) Jacket No. | 24) OCA No. | 25) |
|---|---|---|---|---|---|---|
| *New Albany PD* | | ARREST REPORT | | | *94-8393* | |

**26) Last Name** | First | Initial | **27) Social Security No.**
*TALBOTT, Trudy Lynn* | | | *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*

**28) Address (Number-Street-Municipality-State)** | **29) Place of Birth (City) State**
*165 Woodbourne Drive, New Albany, IN* | *New Albany, IN*

**30) Alias No 1 - Last Name** | First | Initial | **31) Alias No. 1 Social Security No.**
*GILBERT, Trudy Lynn* | | |

**32) Alias No. 2 - Last Name** | First | Initial | **33) Alias No. 2 Social Security No.**
*CLICK, Trudy Lynn : (Maiden Name)* | | |

| 34) Nickname No. 1 | 35) Nickname No. 2 | 36) Date of Birth | 37) Age | 38) Sex | 39) Race | 40) Height (Inches) | 41) Weight | 42) Hair | 43) Eyes |
|---|---|---|---|---|---|---|---|---|---|
| | | *8-15-50* | *44* | *Fe* | *Wh* | *60"* | *100'* | *Bro* | *Blu* |

| 44) Complexion | 45) Marital Status | 46) F.B.I. No. | 47) S.B.I. No. | 48) Prints Taken | 49) Photo Taken | Micro Film No. | 50) Occupation |
|---|---|---|---|---|---|---|---|
| *Lt.* | *Married* | | | ☐ Yes ☒ No | ☐ Yes ☒ No | | *unemployed* |

| 51) Arrest Date | 52) Time | 53) Place (Number-Street-Municipality-State) |
|---|---|---|
| *11-20-94* | *12:26 AM* | *Floyd Memorial Hospital, 1850 State Street, New Albany, IN* |

| 54) Charge No 1 | 55) INS | 56) Nature Code |
|---|---|---|
| *ATTEMPTED MURDER* | *35-42-1-1* | |

| 57) Charge No 2 | 58) INS | 59) Nature Code |
|---|---|---|
| | | |

| 60) Charge No 3 | 61) INS | 62) Nature Code |
|---|---|---|
| | | |

| 63) Charge No 4 | 64) INS | 65) Nature Code |
|---|---|---|
| | | |

| 66) Complainant's Name and Address | 67) Telephone No |
|---|---|
| *Arresting Officers* | |

**68) How Arrested (Check One)**
☐ With Warrant  ☒☒ Without Warrant  ☐ On View  ☐ Issued Summons  ☐ Arrest for other authority

| 69) Offense Date | 70) Time | 71) Place (Number-Street-Municipality-State) |
|---|---|---|
| *11-19-94* | *11:15 PM* | *Parking lot of Bridge Liquors, 110 Knable Lane, New Albany, IN* |

**72) Vehicle Information** | Year | Make | Model | Lic. Plate No. | State
☐ Stolen  ☐ Used by offender  ☐ Involved

Color _____ over _____ | Serial No. | Body Type

### BAIL INFORMATION

| 73) Date | 74) Court | 75) Court Appearance | Time |
|---|---|---|---|
| | | | |

| 76) Amount Bail | 77) Bail Information | 78) Place Committed |
|---|---|---|
| | ☐ Released R-O-R  ☐ Committed Without Bail | |
| | ☐ Released on Bail  ☐ Committed Default of Bail | |

### DISPOSITION

| 79) Date | 80) Court | | (Judge) |
|---|---|---|---|
| | | | |

| 81) Charge Code 1 | 82) Lesser Code 2 | 83) Dismissed Code 3 | 84) Acquitted Code 4 | 85) Other-Describe (To other authority, etc.) Code 5 | ☐ Pending |
|---|---|---|---|---|---|
| | | | | | |

**86) Sentence**

| 87) Reporting Date | 88) Officer's Name | 89) Emp. No | 90) Approving Supervisor's Signature | 91) Emp No |
|---|---|---|---|---|
| *11-20-94* | *M. CULWELL - P. PARSONS* | *4-6* | *M.J. Culwell* | *4* |

| 92) Trial Date | 93) Continuance Date |
|---|---|
| | |

I understand that I have a right to refuse to disclose my Social Security number. I have voluntarily given my Social Security number and understand that it may be computerized in local, state, and national files.

Signed _____

NARRATIVE *Current Check Class C.*
*Com Rock*

NARRATIVE ON BACK

*16*

NEW ALBANY POLICE DEPT.

OPERATION REPORT

| Nature of Incident | | | | | | 2. Nature Code(s) | 5. Complaint Number |
|---|---|---|---|---|---|---|---|
| SHOOTING | Hour | Month | Day | Year | 1. | | 94#8393 |

| Victim Or Object Of Report | | | | | | | 6. A. Prev. Comp. No. |
|---|---|---|---|---|---|---|---|
| CLARENCE E. FULLER | 2316 | 11 | 19 | 94 | 2. | | |

Nature of Incident — 1. SHOOTING

Time of Occurrence (At ☐ Bet ☐) — Hour 2316 Month 11 Day 19 Year 94

4. Nature Code(s)

Address
2702 Paoli Pike   New Albany, In

8. A. Home Phone No.
944-5887

8. B. Business Phone No.

Location/Address Of Incident
Front of Bridge Liquors 110 Knable Ln   New Albany, In

9. A. Geocode

Reported By
New Albany Police Dept

Address

12. Phone

| A. Non Offense Status | 13. B. Additional Reports |
|---|---|
| ☐ Unfounded  ☐ Resolved | ☐ Property ☐ Accident ☐ Impound ☐ Other _____ |

| A. Doctor | 14. B. Hospital | 14. C. Injury Sustained |
|---|---|---|
| Dr. Graves | Floyd Memorial Hospital | Bullet wound (Neck) |

Additional Information (Do Not Repeat Information Above)

At this time and date I received a call from radio that there was a subject

at the hospital ER who had been shot.

When I arrived at the hospital I observed a black male by the name of

Dale Talbott and his wife, Trudy L. Talbott sitting inside the waiting

room area, just outside the ER.  After observing this I walked back into t

ER and observed a black male who was being treated for a gunshot wound to

the right side of his neck. I then approached this subject and asked him

who had shot him and he stated that it was a Trudy Talbott and that she

shot him with a 22Cal Rifle. I asked him why he had been shot and he state

that it had been over a case of beer that had been stolen. He also

stated that he had wanted to return it and Trudy said that he wasn't

going to return anything and then stuck the rifle up to his neck and

shot him. The wounded person was Clarence E. Fuller. At this time Det

Paul Parsons arrived at the scene and took charge of the investigation.

Sgt Brewer also took charge of the evidence recovered. Capt Culwell

was also at the hospital.

| Reporting Officer(s) Signature | 17. Emp. No. | 17. A. Date | 18. Approving Supervisors Signature | 19. Emp. No. | 20. Copy To |
|---|---|---|---|---|---|
| Cpl D O'Neal | #27 | 11-19-94 | | | |
| | | | | 19. A. Date | ☐ Det ☐ Narc  ☐ Juv ☐ Traffic |

NEW ALBANY POLICE DEPARTMENT
SUPPLEMENTARY REPORT

| Date | Case No | | Page No. |
|------|---------|---|----------|
| 11/19/94 | 94-8393 | ATTEMPTED MURDER | 1 |
| | | Classification | |

COMPLAINT:     Subject been shot:

DATE AND TIME:     November 19,1994 - 11:15 P.M.

LOCATION:     Bridge Liquor's
Parking lot 110 Knable Lane
New Albany, In.

EVIDENCE COLLECTED:     Victim shot in the neck, Oral
Trudy Lynn Talbott shot himse
suspects car. Witness Tywanna
( Eddie ) Clarence E. Fuller.

*[handwritten:]* Subp. Milton Ferrell for depo Dec 13th at 2:15 Pm. Have mark Serve w/ Gun

VICTIM:     Clarence E. Fuller ( Eddie )
DOB - 8/3/69  B/M
Address - 2702 Paoli Pike
New Albany, In.

Witness:     Tywanna Mozee B/Fe
Address- 2702 Paoli Pike
Apt. # 339
New Albany, In.
Phone # 944-8600

Milton F. Ferrell
1418 Fabricon Bldg
Jeffersonville, In.
Phone # 283-0763

Lori L,Klingsmi
224 Woodland Dr
New Albany, In.
Phone # 941-881

Suspect:     Trudy Lynn Talbott W/Fe
165 Woodbourne, Drive
New Albany, In.

I learned from radio there had been a subject shot in the parking lot
at Bridge Liquor's 110 Knable Lane New Albany, In. I was advised to g
to Floyd Memorial Hospital, I called Capt. Culwell about the shooting
and he advised myself he would go to the scene on Knable Ln. Upon
my arrival at Memorial Hospital CPL. O.Neal advised myself there was
a subject by the name of Clarence Fuller being treated for a gun shot
wound to the neck, he stated the suspect was setting in the waiting
room  with her husband Dale Talbott, her name was Trudy Lynn Talbott,
A witness by the name of Tywanna Mozee advised myself at the Hospital
she was with the victim at Bridge Liquor's and see saw Trudy Talbott
shoot(Eddie) Clarence E. Fuller  with the rifle. At this time I advis
Trudy Talbott of her rights in the waiting room of Memorial Hospital
she stated she understood them. I asked Trudy why she shot Clarence
Fuller, she stated she had the rifle in her hand and some others also
had the gun and it went off. I then went to the ER and they were
getting Clarence Fuller ready to tranfer to University Hospital Loy.
he had been shot in the neck. I asked Clarence Fuller who shot him an
he stated Trudy Talbott  shot me, he stared Dale Talbott then took th

Officer Making Report
Paul Parsons
18

NEW ALBANY POLICE DEPARTMENT
SUPPLEMENTARY REPORT

| Date | Case No | | Page No. |
|------|---------|---|----------|
| 11/19/94 | 94-8393 | ATTEMPTED MURDER | 2 |
| | | Classification | |

rifle from her and pointed it at me, Clarence Fuller at this time
was being loaded into the ambulance and tranfered to UNiversity
HOspital.

We arrested Trudy L. Talbott at the Hospital for Attempted Murder
Capt. Culwell transported her to the CID office.

Tywanna Mozee stated this was all over a case of Beer that a W/M
subject had purchased and it was setting on the counter she said
and it was put into Dale and Trudy Talbott's car, Tywanna stated
the W/M came out of the Liquor store and told Dale Talbott he wanted
his case of beer back out of his car, Dale told him the Beer was his
and he pointed the rifle at the W/M the W/M then stated he would get
some more, Clarence was then going to get the beer out of Talbott's
car and give it back and that is when Trudy Talbott shot him in the
neck.

Tywanna Mozee came to the CID office and gave a taped statement
SEE STATEMENT:

   See Milton F. Ferrell statement:

   Milton Ferrell stated he purchased a case of beer in Bridge Liguor's
   he stated he left it on the counter and went back in the store when
   he came back his case of beer was gone, he walked outside and saw hi.
   case of beer in Talbott car, he told Talbott he wanted his beer back
   he stated that is when Dale Talbott came around the car with a rife
   his hand and pointed it at Milton Ferrell head, Milton stated forget
   I will get another one and went back into the Liquor store, Milton s.
   Dale Talbott handed the rifle back in the car to a W/Fe.Milton state:
   while he was in the Liquor store he heard a gun shot.

   See Lori L. Klingsmith statement:

ARRESTED:              Trudy Lynn Talbott
                       165 Woodbourne, Drive
                       New Albany, In.


                  Sgt. Brewer ETU processed the scene and all the evidence car etc.

1    significance in this case.

2        So the opening for the United States, the outline if you

3    will of the United States evidence at this point is this:

4    What do we believe the evidence will show in this case? The

5    Defendant, as Judge Hamilton has told you, is named in two

6    counts.  Now essentially it's the same offense, that is the

7    statutes are the same except the dates and parts of the

8    allegations are different.  And that is in count one the

9    Defendant is charged with possessing a firearm, a rifle, on

10   November 19th, 1994.  Now as of November 19th, 1994 we

11   believe the evidence will be that the Defendant had

12   previously been convicted of a felon.  Under federal law if

13   you're a convicted felon you cannot possess a firearm.

14       Count two in this case relates to November 21st, 1994.

15   And instead of a rifle it relates to ammunition.  We believe

16   the evidence will show on November 21st, 1994 the Defendant

17   possessed a quantity of ammunition of the size and type that

18   would go with the rifle he's alleged to have possessed on

19   November 19th.  That in summary fashion is what the charges

20   are in this case.  Now you may hear some testimony about what

21   happened on November 19th.  You may hear some testimony, I

22   can guarantee you will hear some testimony about a shooting

23   on November 19th, 1994.

24       Ladies and Gentlemen, I urge you to keep in mind the

25   Defendant is not charged, is not charged with being involved

1    in the shooting on November 19th, 1994.  He is charged with

2    possessing a firearm on November 19th, '94.  He is charged

3    with possession of ammunition on November 21st, 1994.  He is

4    not charged with the shooting you may hear about that took

5    place on November 19th, 1994.

6         November 19th, 1989 we believe the evidence will show

7    that the Defendant and his wife went to Bridge Liquor Store,

8    a liquor store in New Albany, late the evening of November

9    19th, 1994.  While the Defendant was there he saw and talked

10   to a relative of his, a cousin of his, by the name of

11   Clarence Fuller, sometimes goes by the name of Eddie Fuller.

12        Now during the course of the time that the Defendant and

13   his wife were at the liquor store and Mr. Fuller and an

14   acquaintance of his was at the liquor store an argument

15   developed over a case of beer.  And I believe you will hear

16   testimony, see evidence that that argument involved a man by

17   the name of Milton Ferrell and that there were a couple of

18   witnesses to this argument, this discussion over the case of

19   beer in the parking lot of Bridge Liquor Store on November

20   19th, 1994.

21        I also believe the evidence will show the following:  And

22   that is, that during the course of this argument, this heated

23   discussion, whatever label you end up putting on it, it

24   doesn't particularly matter because he's not charged with

25   arguing with anybody, but as a result of this argument you

1  One other aspect is that you may hear testimony that

2 during the course of this argument Mr. Ferrell had a knife

3 out.  Mr. Ferrell will be here to testify.  He will explain

4 to you what he did and why; what, if anything, he did with

5 the knife and what he did with the knife after he saw the

6 rifle in the Defendant's hands that evening.  That

7 essentially takes care of November 19th, 1994.

8  November 21st, 1994 I believe the evidence will be as

9 follows:  And that is, on that day, a Monday, the Defendant

10 was in Floyd Circuit Court, Floyd County Circuit Court here

11 in New Albany.  He was placed under arrest.  And while he

12 was -- after he was placed under arrest detectives or police

13 officers searched his pockets and I believe the evidence will

14 be found approximately 24 rounds of .22 caliber ammunition in

15 his pockets.

16  Simply straightforward?  Yes, it is.  This is not a

17 complicated case.  Did the Defendant possess a firearm on

18 November 19th, 1994 after having been convicted of a felony

19 in November -- or, excuse me, in 1991?  Did the Defendant

20 possess ammunition on November 21st, 1994 after having been

21 convicted of a felony in 1991?  At the end of the case,

22 Ladies and Gentlemen, after the evidence is in, I will return

23 during the course of my closing and I'll ask you to return a

24 verdict of guilty as to both counts against the Defendant

25 Richard Dale Talbott.

22

WHITLOW-CROSS

164

1     The last aspects of what you will hear is that in order

2   for this to be a federal offense the United States has to

3   prove that this firearm and this ammunition moved in or

4   affected interstate commerce. And I believe you will hear

5   testimony from a man who's trained in the identification and

6   manufacture of firearms that the rifle involved in this case

7   was made in another state other than the State of Indiana and

8   the ammunition involved in this case was manufactured in a

9   state other than the State of Indiana. And that of necessity

10  in order for these items to be in Indiana on November 19th

11  and November 21st of 1994, they had to have moved in

12  interstate commerce.

13     Ladies and Gentlemen, I thank you for paying attention to

14  my comments just now. I thank you in advance for paying

15  attention to the evidence you will be given as it is

16  presented here in court. And on behalf of the United States

17  thank you for your participation as jurors in this case.

18          THE COURT: Does the Defendant wish to make an

19  opening statement?

20          DEFENDANT TALBOTT: I'll reserve, Your Honor.

21          THE COURT: All right. The defense will reserve the

22  right to make an opening statement. Mr. Stuaan, you may call

23  your first witness.

24          GOVERNMENT'S CASE IN CHIEF

25          MR. STUAAN: United States calls Lori Klingsmith,

693

1    time from one state to another.

2        If you find from your consideration of all the evidence

3    that any of these propositions has not been proved beyond a

4    reasonable doubt, then you should find the Defendant not

5    guilty of Count 1.

6        If you find from your consideration of all the evidence

7    that each of these propositions has been proved beyond a

8    reasonable doubt, then you should find the Defendant guilty

9    of Count 1, unless you find the Defendant has proved he acted

10   in defense of himself or others, as I will explain in a

11   moment.

12       To sustain its burden of proof on the charge of being a

13   felon in possession of ammunition, as charged in Count 2 of

14   the indictment, the Government must prove each of the

15   following essential elements beyond a reasonable doubt:

16       First:  On or about November 21, 1994, the Defendant

17   knowingly possessed ammunition as charged, that is,

18   approximately 24 rounds of Winchester Super X, .22 caliber LR

19   ammunition.

20       Second:  Before the Defendant possessed the ammunition on

21   the date alleged, he had been convicted in a court of a crime

22   punishment by imprisonment for a term exceeding one year.

23       Third:  At some time prior to Defendant's possession of

24   the ammunition, it was transported in interstate commerce,

25   that is, the ammunition had travelled at sometime from one

24

1   state to another.

2        If you find from your consideration of all the evidence

3   that any of these propositions has not been proved beyond a

4   reasonable doubt, then you should find the Defendant not

5   guilty of Count 2.

6        If you find from your consideration of all the evidence

7   that each of these propositions has been proved beyond a

8   reasonable doubt, then you should find the Defendant guilty

9   of Count 2, unless you find the Defendant has proved he had

10  possession of the ammunition for the sole purpose of turning

11  it over to law enforcement authorities, as I will explain in

12  a moment.

13       As used in these instructions, the term "firearm" means

14  "any weapon which will or is designed to or may readily be

15  converted to expel a projectile by the action of an

16  explosive."

17       As used in these instructions, the term "ammunition"

18  means ammunition or cartridge cases, primers, bullets, or

19  propellant power designed for use in any firearm."

20       When the word "knowingly" is used in these instructions,

21  it means that the defendant realized what he was doing and

22  was aware of the nature of his conduct, and did not act

23  through ignorance, mistake or accident.  Knowledge may be

24  proved by the defendant's conduct, and by all the facts and

25  circumstances surrounding the case.

25

1    into the courtroom.  And when you consider that, also think

2    about Michelle Buchannan as just one example of how extreme

3    that is.  There is absolutely no evidence in this case that

4    at any time did the defendant say to Michelle Buchannan,

5    well, if I can't give a statement, I can at least give you

6    the bullets.  If he wanted to turn them over, turn them over.

7    He never once, there isn't one piece of testimony in this

8    case that he offered to give Michelle Buchannan that

9    ammunition and that that was refused.  All he said is I want

10   to give a statement.  And she said - well, you have to talk

11   to the detectives.

12       Does he go to the detective's office?  No.  He goes up to

13   the courtroom, where he's arrested and the ammunition is

14   found.

15       Ladies and Gentlemen, after Mr. Talbott makes his

16   closing, I will have a chance to make my rebuttal.  And at

17   the end of that I'll ask you to return a verdict of guilty as

18   to each of the counts against Mr. Talbott.  And, that is, the

19   government has proved beyond a reasonable doubt that on

20   November 19th, 1994 the defendant possessed Government's

21   Exhibit number 1, the .22 caliber rifle, and that beyond a

22   reasonable doubt on November 21st, 1994 the defendant

23   possessed 24 rounds of ammunition, each of those events after

24   he was convicted of a felony crime in 1991 and each instance

25   after those items had moved across state lines.  Thank you.

26

45

1    hinges upon a determination of whether or not the firearm was

2    used in another felony offense.  And we think that under the

3    facts of this case that would not qualify.

4        And the only other calculation argument that we would

5    have would be with respect to the acceptance of

6    responsibility.  Mr. Talbott, I know he went to trial and has

7    vigorously contested the legal guilt, but certainly not the

8    conduct.  He has always -- there's really been no dispute

9    from the instant of his arrest all the way through as to the

10   conduct.  Indeed, he was taking the ammunition, at least by

11   his own account, to the prosecutor's office or to the police

12   to turn in the Monday morning following the Saturday night

13   fight at the liquor store.

14       So we think that these things do demonstrate an

15   acceptance of responsibility, although he disputes the legal

16   basis upon which the conviction is based.  And those

17   essentially are the calculations.

18       I do acknowledge that I did not present to the court in

19   writing, in written form, or to the prosecutor or to the

20   probation department in either written or oral form

21   concerning the ex post facto.  In large part that's been due

22   to my confusion and Mr. Talbott and I have gone round and

23   round on the issue of those two batteries and how they

24   intertwine and he has consistently insisted that somebody was

25   trying to say he went to trial on one.

Number  068-93  (5820)

Date    March 15, 1993

Subject  Maintenance of Inmate Files

# Operations Memorandum

1.  PURPOSE.  The purpose of this Operations Memorandum is to advise Unit Team staff members of a recent case concerning staff response to a claim by an inmate that his central file contained incorrect information.

2.  BACKGROUND.  In Sellers v. Bureau of Prisons, 959 F.2d 307 (D.C. Cir. 1992), the court held that the Bureau of Prisons must maintain accurate records of information which are capable of being verified.  The case involved an inmate who was challenging information in his file, including a presentence report reference to an alleged bank robbery. The inmate contended that the bank robbery charge had been dismissed, and that its inclusion in the presentence report had resulted in the denial of parole and adverse determinations regarding custody and security classifications, job and quarters assignments, and the opportunity to earn money and good time.  The Parole Commission had noted in the inmate's file that he disputed the information in his record: the Bureau of Prisons apparently maintained the challenged information in the record without comment, despite the fact that the probation officer had written a letter indicating that the charge had been dismissed.

   The court held that if an agency willfully or intentionally fails to maintain accurate files, and those records then result in an adverse determination toward an individual, the agency will be liable for money damages.  The rule of the case is that "the agency must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual."  Sellers at 312.  The Sellers court held that an agency does not meet the requirements of the Privacy Act simply by noting that the information is disputed.  If the court were to find a willful or intentional failure to maintain accurate records, the agency could be liable for

Exhibit 2

EX-28

money damages to the inmate. Because inmates from all over the country may file Privacy Act suits in the District of Columbia, the Sellers case will affect all of our institutions. A final determination has not yet been made in Sellers regarding whether the Bureau's actions will be considered willful or intentional and therefore result in the granting of monetary damages to the inmate. The procedures recommended below in this Operations Memorandum are intended to minimize the chances of such award resulting from future challenges.

3.   ACTION. Unit team staff need to take reasonable steps to ensure the accuracy of challenged information in an inmate's central file, particularly when the information challenged can be verified. Initial reasonable steps include requiring specific action from the inmate, such as providing documents which support a challenge to the information in the files. The inmate can also be asked to provide the names of people to contact regarding the challenged information.

If an inmate is able to provide such information in support of a challenge, unit staff have a duty to investigate and to take steps to ensure the correction of any inaccuracies discovered. Once a determination can be made by Bureau staff that information in an inmate's central file is incorrect, that information must not be used by staff. For example, in a situation like Sellers where the inmate challenged the Presentence Report, unit staff should not change the report but should inform the probation officer that the report has been challenged. If the probation officer confirms that the information in the report is inaccurate, staff should insert a note to that effect in the file in order to ensure that no decisions affecting the inmate are based on the discredited information. Staff should also request an updated Presentence Report from the probation officer. These procedures will be incorporated into the Central File Program Statement at the next annual review.


Patrick R. Kane
Assistant Director
Correctional Programs
Division

Wallace H. Cheney
Assistant Director
Office of General Counsel

Ex-29

(1) initial review of all current files of the inmate population;

(2) receipt of inmate requests to review files, and the monitoring of the inmate review of files; and

(3) screening of all records and documents in the future as they are sent to the Inmate Central File for filing.

Each institution may adopt its own procedures and forms for submitting and acknowledging requests and for logging and scheduling Inmate Central File reviews.

b. **Inmate Request and Review**. Any inmate seeking to look at his/her Inmate Central File shall submit a request to a staff member, as designated in the local instruction.

- The inmate's request should be acknowledged.
- The inmate should be permitted to review the file whenever practicable.
- All file reviews must be done under constant and direct staff supervision.
- Those materials which have been determined to be non-disclosable shall be removed from the folder before inmate review.
- An entry shall be made on the Inmate Activity Record (BP-381) to show the date the inmate reviews the file. The staff member monitoring the review shall initial the entry and the inmate shall be asked to initial it.

c. **Inmate Challenge to Information**. An inmate may challenge the accuracy of the information in his or her Inmate Central File. Unit team staff <u>shall</u> take reasonable steps to ensure the accuracy of challenged information, particularly when that information is capable of being verified. The inmate is required to provide staff with sufficient information in support of a challenge (names of persons to contact, government agency, etc...).

When an inmate provides such information, staff <u>shall</u> review the alleged error(s) and take reasonable steps to ensure the information is correct.

For example, if an inmate challenges information in the Presentence Investigation Report (PSI), staff should inform the appropriate U.S. Probation Office (USPO) in writing of the disputed information, and request that a written response also be provided. **USPO procedures, however, do not allow for changes or addendums to be made to the Presentence Investigation Report after sentencing since it is a court document.**

Ex-30

information, or some part thereof is not accurate, staff shall attach the Bureau's inquiry and the USPO response to the challenged document. Staff shall file this information in the

Ex-31.

applicable section of the Inmate Central file, and also make a
notation on the Inmate Activity Record form (BP-381) to ensure
that future decisions affecting the inmate are not based on the
discredited information.

When the USPO verifies that the information in the PSI is
indeed inaccurate, as claimed by the inmate, staff should
subsequently review, and where indicated, correct Bureau
generated reports or data such as the Inmate Load and Security
Designation form (BP-337), the Custody Classification form
(BP-338), Progress Report, and any other reports that may have
been based on the PSI.  Bureau reports, data, or SENTRY
transactions should be corrected within a reasonable period of
time after identification as being inaccurate.

If the information source will provide a corrected document or
data, it should be immediately inserted in the file or data base
and the inaccurate information or document removed.  A notation
on the Inmate Activity Record form should acknowledge the
insertion of the corrected information or document.

d.  <u>Inmate Copies</u>.  Any inmate who wishes to receive copies of
disclosable materials from the file shall submit a request to
institution staff.  Within a reasonable time after the request,
institution staff shall provide the inmate copies of requested
disclosable documents maintained in the Inmate Central File.
Fees for the copies are to be calculated in accordance with the
Program Statement on Release of Information.

e.  <u>Privacy Folder</u>.  Records which have been determined, under
separately issued guidelines, to be excluded from inmate review
shall be placed in the Privacy Folder.  Normally, actual
placement of documents in the Inmate Central File is the Unit
Secretary's responsibility.  The Privacy Folder shall be placed
on top of section 5 in the Inmate Central File.

As materials from any source are submitted for placement in
the Inmate Central File, they are routed to an appropriate staff
member the Warden designated.  The Case Manager shall review the
materials, to ascertain whether to place them in the regular
sections, the Privacy Folder, or discard them.  Any document to
be excluded from inmate review must be stamped "FOI EXEMPT".  At
each Program Review and before an inmate reviews his/her Inmate
Central File, the Case Manager shall review the file to ensure
the proper location of forms and purge outdated or unnecessary
forms and/or documentation.

f.  <u>Parole Files</u>.  Parole Mini-files, examiner packets, and
prehearing assessments are not disclosable unless specifically

Ex-32