UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD DALE TALBOTT,          ) | |
| ) | |
| Plaintiff,           ) | |
| ) | |
| vs.           ) | Civil Action No. 06-1194 (GK) |
| ) | ECF |
| FEDERAL BUREAU OF PRISONS,  ) | |
| ) | |
| Defendant.          ) | |

**MOTION TO DISMISS, OR IN THE ALTERNATIVE,
MOTION TO REVOKE PLAINTIFF'S *IN FORMA PAUPERIS* STATUS**

The defendant, Federal Bureau of Prisons, by and through their attorneys, Kenneth L. Wainstein, United States Attorney for the District of Columbia and Charlotte A. Abel, Assistant United States Attorney, make the following motion to dismiss, or in the alternative, to revoke plaintiff's *in forma pauperis* status. (Doc. No. 4). As explained below, it appears that the plaintiff's is not entitled to proceed *in forma pauperis*.

**I.      FACTS**

Plaintiff, Richard Dale Talbott (Talbott) is a federal prisoner currently incarcerated at the Federal Correctional Institution in Greenville, Illinois (FCI Greenville). *See* Attachment A, Public Information Inmate Data.[1] Talbott was found guilty of two violations of 18 U.S.C. §

---

[1] Talbott is a frequent post conviction relief litigator. His unsuccessful prior post conviction relief litigation includes a 28 U.S.C. § 2255 motion filed under Cause No. NA 94-21-CR-H/H in the Southern District of Indiana, and a petition filed pursuant to 28 U.S.C. § 2241 challenging his placement in a high security institution, his security classification, and an objection to DNA testing. *See Talbott v. Olson*, Case No. TH 01-233-C-T/F. In an order dated December 12, 2001, the Seventh Circuit noted that "Talbott has filed his fourth applicaton for leave to file a second or successive motion under §2255." *Talbott v. United States*, No. 01-4111. In rejecting Talbott's request in No. 01-4111, the Seventh Circuit noted that "he offer[ed] no argument or support for

922(g) and 924(e), felon in possession of a firearm and unlawful possession by a felon of ammunition. *See* Attachment B, Judgment in a Criminal Case.

On September 11, 2002, plaintiff filed a petition for writ of habeas corpus under 28 U.S.C. §2241 in which he challenged his classification by the Bureau of Prisons (BOP) as having an instant offense behavior of "greatest severity." *See* Attachment I. Talbott also asserts that he was denied due process when the respondent failed to request an updated Presentence Investigation Report (PSI) following his resentencing. *Id.* Talbott contended that it was error for his penitentiary unit team to classify him with a public safety factor. *Id.*

On January 2, 2003, the District Court denied Talbott's petition. The court found that Talbott "failed to show that his classification or custody are in violation of the constitution, laws or treaties of the United States." *Id.*

On September 2, 2005, plaintiff filed case no. 06-633, in the Southern District of Illinois. *See* Attachment J. Filed as an action under 28 U.S.C. §2241, plaintiff sought to correct information in his central file which was impacting his security classification. *Id.* The court found that this action was not a proper action under § 2241. *Id.*

The offense conduct section of Talbott's Presentence Investigation Report (PSI), describes the conduct underlying each offense, occurring on November 19 and 21, 1994.[2]

---

[his] contention [that his § 2255 remedy is inadequate] and [his contention was] patently untrue." *Id.* The Seventh Circuit's order in No. 01-4111 also makes note of an unsuccessful mandamus action that Talbot filed attacking his conviction's validity.

[2]Defendant is willing to present this portion of the PSI to the Court for inspection *in camera*. Generally, the PSI is considered contraband in the possession of inmates, and thus, Talbott cannot be sent a copy of it as an attachment to the government's filing. In addition, the courts have made it clear that the PSI is not the BOP's record and is prohibited from further dissemination. Notwithstanding, plaintiff has access to his own PSI at his facility.

Paragraphs 4-9 described the offense conduct for the felon in possession charge which occurred on November 19, 1994. *Id.* Part of that description was:

> 7. The rifle was returned to the defendant's wife in side their car. At that point an argument developed between the defendant and Fuller concerning the same case of beer. Fuller approached the defendant's car to retrieve the beer, and as he reached into the car, Fuller was shot once in the neck. It is unclear whether the defendant had one or both of his hands on the rifle when the shot was accidentally discharged.

*Id.* Paragraph 16 of the PSI contained a Specific Offense Characteristic enhancement of 4 points because Talbott used the firearm in connection with another felony offense (Criminal Recklessness, which Talbott was charged with in Floyd Circuit Court). *Id.* It appears that Talbott made several objections to the PSI including an objection to this enhancement. *Id.* It does not appear, however, that Talbott objected to the factual statements contained in paragraphs 4-9. *Id.* Talbott was sentenced to a term of 327 months incarceration, to be followed by five years of supervised release and fined $10,000.00. *See* Attachment B.

Talbott appealed his conviction and sentence to the Seventh Circuit Court of Appeals. On appeal, Talbott's possession of a firearm conviction was reversed, but the possession of ammunition conviction was affirmed. *See United States v. Talbott*, 78 F.3d 1183 (7th Cir. 1996). With respect to his sentence as an "armed career criminal" on the affirmed ammunition possession conviction, the Seventh Circuit noted "Talbott has a long criminal record, and the government asked the judge to sentence him as an armed career criminal under 18 U.S.C. §924(e). He satisfies the statutory requirements." *Id.*, 78 F.3d at 1189.

On remand, the United States elected not to retry Talbott on the felon in possession of a firearm charge, thus eliminating the need for a second trial. The district court then resentenced Talbott to a term of imprisonment for 264 months. *See* Attachment D, Amended Judgment in a Criminal Case. Talbott again appealed, but this appeal proved unsuccessful and Talbott's conviction and sentence were affirmed in an unpublished decision. *See States v. Talbott*, No. 96-2712 (7th Cir. Feb. 13, 1997).

Talbott is currently serving his 264 month term of imprisonment for his 18 U.S.C. § 922(g) conviction. *See* Attachment A. Talbott's current projected release date is March 9, 2014. *Id.* His full term expiration date is November 20, 2016. *Id.* As of the date plaintiff filed suit, he was scored as a medium security inmate. *See* Attachment E. This included 7 points for the severity of the current offense. In addition, plaintiff had a public safety factor of greatest severity.

## II.     PROCEDURAL BACKGROUND

On June 29, 2006, Talbott filed this complaint against defendant Federal Bureau of Prisons ("BOP"). *See* Doc. No. 1. At the same time, Talbott filed a motion to proceed *in forma pauperis* (*"IFP"*). *See* Docs. No. 2 & 3. The Court granted Tablott's request to proceed *IFP* and, while not requiring an initial partial payment, ordered Talbott to pay twenty percent of the preceeding month's credits to his prisoner account. *See* Doc. No. 4. Talbott has not made any payments toward the filing fee. *See* Dkt.

In the current action, Talbott seeks declaratory relief and monetary award alleging that the BOP has violated sections (g)(4) and (e)(5) of the Privacy Act of 1974, found at 5 U.S.C. § 552a. He alleges that the BOP has relied on inaccurate information contained in his PSI, and that the

BOP's reliance on this information has resulted in labeling his current offense a crime of violence, application of a public safety factor, and impact upon his custody and security classification.

Specifically, Talbott complains that paragraphs 4-9 of the PSI has been used to make decisions adverse to him. Although Talbott calls this information "inaccurate", he does not explain what is incorrect about the contents of paragraphs 4-9. Talbott implies that he disagrees with the indication in paragraph 7 regarding the shooting of a person with a rifle. Talbott alleges that the BOP has refused to take steps to verify the information.

While incarcerated at the United States Penitentiary in Terre Haute, Indiana (USP Terre Haute), Talbott filed a request for administrative remedy (#264470-F1), received on April 8, 2002, in which Talbott challenged his custody classification. *See* Attachment F. Specifically, Talbot asserted that his current conviction does not involve someone being shot. *Id.* The Warden responded on April 25, 2002, finding that Talbott's custody classification was correct. *Id.* Talbott appealed to the North Central Regional Office (264470-R1). *Id.* The appeal was denied on May 29, 2002. *Id.* Talbott appealed to the Administrator of the National Inmate Appeals (264470-A1). *Id.* The appeal was denied on August 6, 2002. *Id.*

After arrival at FCI Greenville, Talbott tried to use the administrative remedy process again to challenge this issue. On November 29, 2004, a request for administrative remedy was received in which Talbott asserted that his case manager was misinterpreting what his current offense was and sought to have his custody classification score for offense severity reduced (#356328-F2). *See* Attachment G. The Warden responded on December 8, 2004, and found that this issue had been addressed in administrative remedy #264470 and that no additional

5

information had been provided. *Id.* She further indicated that the U.S. Probation Office had been contacted and indicated that they were not inclined to make any changes to the PSI. *Id.* Talbott appealed to the Regional Office (#356328-R3) and his appeal was denied on January 28, 2005. *Id.* Talbott appealed to the Administrator of National Inmate Appeals (#356328-A2) and his appeal was denied on July 8, 2005. *Id.*

Plaintiff has filed many other remedies on related matters. *See* Attachment H. However, these were the only two which were "exhausted" to all levels of the BOP's remedy program.

### III.   LEGAL STANDARDS

A.  The Prison Litigation Reform Act

28 U.S.C. § 1915(g) provides:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

District courts should review a prisoner's litigation history in considering his request to proceed *IFP*. *See Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). "[A]fter three meritless suits, a prisoner must pay the full filing fee at the time he *initiates* suit." *Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002), *citing Fanderberg v. Donaldson*, 259 F.3d 1321, 1324 (11th Cir. 2001). *Also see Shabazz v. Campbell,* 12 Fed.Appx. 329, 330 (6th Cir. 2001)(unpublished); *McGee v. Myers*, 10 Fed. Appx. 528, 529 (9th Cir. 2001) (unpublished).

B.  The Privacy Act.

Section 552a(e)(5) of the Privacy Act requires that an agency "maintain all records" that it uses to make a "determination about any individual" with a level of "accuracy, relevance,

timeliness, and completeness" that reasonably assures "fairness to the individual in the determination."  The Act provides civil remedies at 5 U.S.C. § 552a(g) for violations of § 552a(e)(5).  Section (g)(1)(C) provides that an individual may bring a civil action against an agency that does not maintain a recording relating to that individual with the level of "accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the ...rights, or opportunities of...the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual..."  Section (g)(4) provides for civil remedies if the appellant can show that the agency willfully or intentionally failed to maintain a record which resulted in an adverse determination.

> In order to state a claim under the Privacy Act,
>
> a plaintiff must first establish that the information in question is covered by the Act as a record contained within a system of records.  5 U.S.C.S. § 552a(b).  Once a plaintiff establishes that the information is covered by the Privacy Act he must show (1) that he was aggrieved by an adverse action; and (2) that the agency failed to maintain the records with a degree of accuracy necessary to assure fairness in the determination.

*Balderrama v. U.S. Dept. Of Homeland Security*, 2006 WL 889778 (D.D.C., March 30, 2006).  Declaratory and injunctive relief are available to plaintiffs who can establish these two requirements.  *Id.*, *citing Fisher v. NIH*, 934 F.Supp. 464 (D.D.C. 1996).  Monetary damages can only be recovered if the plaintiff can "make two additional showings (3) that reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) that the agency acted intentionally or willfully in failing to maintain accurate records."  *Id., citing Deters v. U.S. Parole Comm'n,* 85 F.3d 655 (D.C.Cir. 1996).   Perfect records are not required.  *Griffin v. Ashcroft*, no. 02-5399, 2003 WL 22097940 (D.C. Cir. 2003).

The agency obligations created by the Privacy Act are not absolute.  5 U.S.C. § 552a(j).  The regulations applicable to the Bureau of Prisons exempt its system of inmate records from the Act's relevant provisions of the Privacy Act.³  Id.; see also 28 C.F.R. § 16.97(a); (b)(3) and (9); Phillips v. Hawk, 1999 WL 325487, *1 (D.C. Cir.) (citing White v. United States Probation, 148 F.3d 1124, 1125 (D.C. Cir. 1998) (per curiam); Deters v. United States Parole Comm'n, 85 F.3d 655, 658 n.2 (D.C. Cir. 1996)).  See also Risley v. Hawk, 108 F.3d 1396, 1397 (D.C. Cir. 1997) (Bureau of Prisons exempt from Privacy Act provision requiring inaccurate files be amended).  Thus, the Bureau of Prisons has no duty to amend, upon request, an allegedly inaccurate record.  Moreover, even were the Court to determine that Appellant had a plausible Privacy Act claim,

---

³ Section 552a(j) of the Privacy Act provides in pertinent part:

> (j) General Exemptions. – The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553 (b)(1), (2), and (3), (c), and ) of this title, to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) if the system of records is –
>     . . . .
>
> (2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, **correctional**, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) **reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.**

(Emphasis added).

the appellee did not have reasonable access to correct the PSI which is a court document, and it was the province of the criminal court to make the determination about sentencing.  See <u>Deters v. U.S. Parole Commission</u>, 85 F.3d 655, 658 (D.C. Cir. 1996) (atypical case where information not available or accessible to agency for determination).  Moreover, no action for money damages would lie, since the agency's conduct was not intentional or willful, in view of the agency's reasonable reliance on the fact-finding process conducted in court. <u>Id</u>. at 660.

## IV.  ARGUMENT

### A.  Plaintiff is not entitled to *IPF* status.

In this case, Talbott is not alleging that he is under "imminent danger of serious physical injury."  Thus, his *IFP* status depends on him not having 3 or more prior strikes.  See 28 U.S.C. § 1915(g).  It appears that at the time Talbott filed the complaint in this case, he already had more than three prior strikes.

#### 1. *Strike One*

On September 26, 1991, Talbott received strike one.  The District Court for the Southern District of Indiana held that Case No. 91-834, alleging violations under 42 U.S.C. § 1983, was "legally frivolous" and dismissed the case pursuant to 28 U.S.C. § 1915(d).  *Talbott v. Wiggington, et al.*, 91-834 (S.D.In., filed July 29, 1991).  *See* Attachment A.

#### 2.  *Strike Two*

In *Talbott v. Donahue, et al.*, the District Court for the Southern District of Indiana denied Talbott's request to proceed *in forma pauperis* and found that the suit filed by Talbott was "legally frivolous." *Talbott v. Donahue, et al.*, 91-858 (S.D.In., filed August 2, 1991).  The Court dismissed the action on October 3, 1991.  *See* Attachment B.

9

### 3. *Strike Three*

*Talbott v. New Albany Police Dept., et al.* was a suit brought pursuant to 42 U.S.C. § 1983. *See* Attachment C. On March 15, 1995, the District Court found that the action was "legally frivolous within the meaning of 28 U.S.C. § 1915(d)." The court dismissed the action and denied Talbott's request to proceed *in forma pauperis*. *Talbott v. New Albany Police Dept., et al.*, No. 95-0036 (S.D.In., filed March 7, 1995). *See* Attachment C.

### 4. *Strike Four*

In *Talbott v. Faith, et. al.*, the District Court found that Talbott's action challenging "the legality of the revocation of his probation" under 42 U.S.C. § 1983 was "legally frivolous." *See* Attachment D, *Talbott v. Faith, et al.*, No. 95-0214 (S.D.Ind., filed December 4, 1995). On December 18, 1995, the court dismissed the action and denied Talbott's request to proceed *in forma pauperis*.

### 5. *Strike Five*

On June 19, 1996, the District Court dismissed an action brought by Talbott under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *Talbott v. Colins, et al.*, 96-63 (S.D.Ind., filed May 16, 1996). The court found that all ten of the causes of action alleged by Talbott were "frivolous within the meaning of 28 U.S.C. § 1915(e)(2)(B). *Id.* The constituted Talbott's fifth strike. *See* Attachment E.

### 6. *Strikes Six & Seven*

On June 21, 1996, Talbott suffered his sixth and seventh strikes. On that date, the District Court dismissed two cases brought by Talbott 42 U.S.C. § 1983. Both were found to be "legally frivolous." *See* Attachments F & G, *Talbott v. Donahue, et al.*, 96-47 (S.D.Ind., filed April 12, 1996) and *Talbott v. Striegel*, No. 96-46 (S.D.Ind., filed April 12, 1996).

       **7.** *Strike Eight*

Talbott filed suit under 28 U.S.C. § 1983 alleging that "he is entitled to damages because he was arrested by officers of the New Albany Police Department without a warrant and that the arrest led to his federal conviction for possession of ammunition" which Talbott contends was "contrary to his federal and state constitutional rights to bear arms." *See* Attachment H, order in *Talbott v. New Albany Police Dept*, No. 96-157 (S.D.Ind., filed November 12, 1996). The court held that the action failed to state a claim. The action was dismissed on November 22, 1996, and Talbott's request to proceed *in forma pauperis* was denied.

    B.  <u>Talbott should be required to pay the full filing fee before proceeding</u>.

Cases dismissed by a court as frivolous or for failure to state a claim, "prior to the effective date of the PLRA count as 'strikes' under §1915(g)." *Ibrahim v. D.C.*, 208 F.3d 1032 (D.C. Cir. 2000). The eight dismissals described above should count as strikes against Talbott. In order to proceed, Talbott should be required to pay the filing fee ($350.00) in full as it is clear that he has exceeded the allowable limit on strikes. *See Keener v. Penn. Bd. Of Probation and Parole*, 128 F.3d 143 (D.C. Cir. 1997).

    C.  <u>The case is barred by the two-year statute of limitations</u>.

"A civil action under the Privacy Act must be brought 'within two years from the date on which the cause arises'." *Cooper v. Bureau of Prisons*, No. 02-1844, 2006 WL 751341, at *2 (D.D.C. March 23, 2006), *citing* 5 U.S.C. § 552a(g)(5). The critical question in answering a statute of limitations question is when did plaintiff have reason to know of the alleged violation. *Id., citing Diliberti v. U.S.*, 817 F.2d 1259, 1262 (7th Cir. 1987).

Plaintiff alleges that shortly after arriving at Greenville (which was on September 3, 2003[4]), he became aware of the inaccurate information in his Central File which was being used to make adverse decisions. *See* Doc. 1, pg. 4. A review of the records, however, reveals that Talbott was aware as early as April 2002, that the BOP was using the contents of paragraphs 4-9 of the PSI to make various classification decisions. This is evidenced by his filing of administrative remedies on this issue while at USP Terre Haute.

Plaintiff filed the current action on June 29, 2006, well outside of the two year statute of limitations provided for in 5 U.S.C. § 552a(g)(5). Equitable tolling does not apply in this case as there is no evidence that plaintiff was unable to obtain vital information to his claim. Plaintiff makes no such allegations and there is no evidence to support such a claim.

      D.  Plaintiff fails to state a claim under the Privacy Act.

The plaintiff is barred from filing a claim under the Privacy Act to amend his PSI. White v. United States Probation Office, 148 F.3d 1124, 1125 (D.C. Cir. 1998). Id. In addition, Talbott's claim for damages under the Privacy Act must also fail because the Inmate Central Records System containing PSIs is exempt from subsection (e)(5) of the Privacy Act. Barbour v. United States Parole Comm'n, 2005 WL 70041 (D.C. Cir. Jan. 13, 2005)(per curiam) at *1; Mitchell v. Bureau of Prisons, 2005 WL 3275803 (D.D.C. Sept. 30, 2005) at *4; Skinner v. U.S. Dep't of Justice, 2005 WL 1429255 (D.D.C. June 17, 2005) at *2. See also 28 C.F.R. § 16.97(j)(effective August 9, 2002). Mem. Op. at 4.

Moreover, plaintiff does not really dispute the contents of paragraphs 4-9 of the PSI. Although he seems to imply that *he* did not shoot someone, the PSI does not so allege. Rather the

---

[4] *See* Attachment A.

PSI indicates that a person was shot and that it was not clear whether Talbott had one or two hands on the rifle when it went off. At no point in the complaint does Talbott specifically allege that any portion of paragraphs 4-9 are inaccurate. Rather, his complaint is that the BOP was wrongly relying on those paragraphs in making classification decisions because that count had been overturned. This type of challenge to the use of information, rather than to the accuracy of the information, is not a proper suit under the Privacy Act. *Doyon v. U.S. Dept. of Justice*, 304 F.Supp.2d 32, 35 (D.C.D. 2004) (holding that a challenge to the use of criminal history information in a plaintiff's PSI in order to make classification decisions was not a proper claim under the Privacy Act). Further, it has been held that in "making custody classification decisions, BOP may take into account evidence of a prisoner's behavior even if the behavior did not result in a criminal conviction." *Id., citing Griffin v. Ashcroft*, 2003 WL at *1.

### E.  Plaintiff's claim is moot.

On September 6, 2006, changes were made to plaintiff's custody classification scoring. *See* Attachment K. Specifically, the scoring for plaintiff's current offense was changed to reflect only the possession of ammunition charge (and disregarding paragraphs 4-9 of the PSI which describe the prior charge for felon in possession of a firearm). *Id.* The effect of this change is that Talbott's points for his current offense were reduced (from 7 for greatest severity to 3 for moderate severity). *Id.* Second, the public safety factor for greatest severity offenses was removed. *Id.* This change has rendered Talbott's claim moot. *See Doyon v. U.S. Dept. of Justice*, 304 F.Supp.2d at 35.

**V.    CONCLUSION**

For the reasons stated above, the defendant moves that Talbott's *IFP* status be revoked, and that he be required to pay the full filing fee, within a reasonable time such as 15 days, under penalty of dismissal with prejudice for failure to comply with an order of the Court. *See* Fed. R. Civ. P. 41(b). Defendant moves to dismiss the case because it is barred by the statute of limitations, Talbott fails to state a claim, and his claim is moot.

Respectfully submitted,

/s/
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

/s/
CHARLOTTE A. ABEL, D.C. Bar #388582
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W.
Washington, D.C. 20530

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 21st day of September, 2006, a copy of the foregoing Defendant's Motion to Dismiss will be mailed, postage prepaid, to plaintiff, pro se, at the following address:

Richard Dale Talbott
04895-028
Federal Correctional Institution
P.O. Box 5000
Greenville, IL 62246

      ___/s/_____
CHARLOTTE A. ABEL, D.C. Bar #388582
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W.
Washington D.C. 20530